OPINION
Plaintiff-appellant Christopher Smith appeals from a summary judgment rendered against him, and in favor of defendants-appellees Five Rivers MetroParks and Captain Larry Jones, with respect to Smith's complaint, charging MetroParks and Jones with race discrimination, pursuant to Title VII of the Civil Rights Act of 1964 and R.C. 4112.99, and with violating his equal protection, and substantive and procedural due process rights, pursuant to Section 1983, Title 42, U.S.Code. Smith argues that the trial court erred in granting appellees' motion for summary judgment, because genuine issues of material fact remain to be litigated, including whether the reason given for his termination — that he had been dishonest with MetroParks about his outside employment — was merely a pretext for unlawful discrimination.
We conclude that the trial court correctly granted summary judgment to MetroParks on Smith's procedural due process claim, since the post-termination proceedings conducted in front of an arbitrator were sufficient to cure any deficiencies in the notice of the charges that MetroParks provided to Smith. However, we conclude that the trial court did err in granting MetroParks summary judgment with respect to the remainder of Smith's claims, since a triable issue of fact exists regarding whether MetroPark's stated justification for terminating Smith was merely a pretext for unlawful discrimination. Accordingly, the judgment of the trial court is Affirmed with respect to Smith's procedural due process claim, but Reversed with respect to the remainder of Smith's claims, and this cause is Remanded for further proceedings consistent with this opinion.
 I
Five Rivers MetroParks operates eleven park facilities, located primarily in Montgomery County. Smith, who is black, began working at MetroParks in 1983, as a park ranger. In early 1996, Smith filed a complaint with the Ohio Civil Rights Commission, charging MetroParks with discrimination for failing to promote him and provide him with equal pay. MetroParks settled the matter out of court by agreeing to promote Smith to the rank of lieutenant, which MetroParks did in May, 1996.
In February, 1997, one of Smith's subordinates, Park Ranger Tina Clanin, filed a complaint with MetroParks, accusing Smith of sexual harassment and supervisor misconduct. As part of her accusation that Smith had engaged in supervisor misconduct, Clanin alleged that Smith had threatened her for repeating information he had shared with her, regarding his outside, part-time employment with a local television station, WHIO, and a local radio station, WROU.
As a result of Clanin's complaint, MetroPark's Human Resources Director, Kathy Flynn, conducted an investigation into the charges leveled at Smith. On March 4, 1997, Flynn sent Smith a notice, informing him that he was required to attend a pre-disciplinary hearing scheduled for March 7, 1997, to discuss the charges of sexual harassment and supervisor misconduct. Smith was placed on immediate suspension, with pay, pending the results of the investigation.
At the March 7th hearing, Flynn questioned Smith about the sexual harassment and supervisor misconduct charges. During Flynn's questioning of Smith, the subject of Smith's outside employment came up. Flynn asked Smith if he currently had any outside employment, aside from the free-lance disc jockey job about which he had already informed MetroParks. According to Flynn, Smith denied having any other outside employment, but did acknowledge that he had been volunteering at certain places, and was in training for potential positions; Smith stated that while those positions were currently available to him, he had not accepted them. When Flynn asked Smith if he was currently employed at WHIO and WROU, Smith, according to Flynn, replied "no."
After the hearing, Flynn contacted WHIO and WROU, and learned that Smith had been a part-time, paid employee at WHIO since December 12, 1996, and a part-time, paid employee at WROU since March 1, 1997. Flynn relayed this information to Park Ranger Captain Larry Jones. Upon determining that Smith's dishonesty regarding his outside employment warranted termination, Jones and Flynn recommended to MetroPark's Executive Director Marvin Olinsky that Smith be discharged. Olinsky approved their recommendation.
On March 18, 1997, Jones and Flynn met with Smith to inform him of the results of their investigation. Jones and Flynn told Smith that they could not prove that he had sexually harassed Clanin, left work early without permission, or falsified logs, since it was "other people's word against his." However, Jones and Flynn informed Smith that they had contacted WHIO and WROU, and found out that he was, in fact, employed by them. Flynn told Smith that she believed that he had lied to her about not having any outside employment, and further informed him that MetroParks considered his dishonesty regarding his outside employment to be a very serious offense. Flynn then gave Smith a choice between resigning or being fired. Smith was fired after declining to resign.
Smith filed a grievance. After a two-day hearing, the arbitrator denied Smith's grievance, upon finding that Smith had been afforded fair notice and an opportunity to be heard on the charges brought against him, and that he had been terminated for just cause.
On July 9, 1998, Smith filed a Verified Complaint in the Montgomery County Court of Common Pleas, charging MetroParks and Jones with race discrimination pursuant to Title VII and R.C.4112.99, and with violating his equal protection, and substantive and procedural due process rights, pursuant to Section 1983, Title 42, U.S.Code. MetroParks and Jones subsequently moved for summary judgment, and Smith filed a response thereto. On April 6, 1999, the trial court rendered summary judgment in favor of MetroParks and Jones with respect to all counts of Smith's Verified Complaint.
Smith appeals from the summary judgment rendered in MetroPark's favor.
 II
Smith's First and Second Assignments of Error state:
 I. WHETHER THE TRIAL [sic] ERRED WHEN IT ISSUED AN ORDER OF SUMMARY JUDGMENT WHEN THERE REMAINS A GENUINE ISSUE OF MATERIAL FACT ON APPELLANT'S CLAIM OF DISCRIMINATION.
 II. THE TRIAL COURT ERRED WHEN IT ENTERED SUMMARY JUDGMENT AGAINST PLAINTIFF, ALTHOUGH A VIABLE CLAIM [sic] RACE DISCRIMINATION EXISTS.
A trial court may grant a moving party summary judgment pursuant to Civ.R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64. The moving party bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element or elements of the nonmoving party's claims. Dresher v.Burt (1996), 75 Ohio St.3d 280, 293. The moving party cannot discharge this burden by making conclusory assertions that the nonmoving party has no evidence to prove his case. Id. Instead, the moving party must point to some evidence of the type listed in Civ.R. 56(C) — the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any — that affirmatively demonstrates that the nonmoving party has no evidence to support his claims. Id. If the moving party satisfies its initial burden, then the nonmoving party has a reciprocal burden pursuant to Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial; if the nonmoving party does not so respond, then summary judgment, if appropriate, must be entered against it. Dresher, supra.
Smith argues that the trial court erred by rendering summary judgment in MetroPark's favor with respect to his race discrimination and 42 U.S.C. § 1983 claims because he presented sufficient evidence to permit reasonable minds to conclude that MetroParks used his alleged dishonesty regarding his outside employment as a pretext for unlawful discrimination.
In order to prevail on a race discrimination claim brought pursuant to Title VII or R.C. 4112.99, a plaintiff must make a prima facie showing that he: (1) belongs to a racial minority; (2) was discharged; (3) was qualified for the position; and (4) was replaced by, or his discharge permitted the retention of, a person who was not a member of the protected class. See Plumbers Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. RightsComm. (1981), 66 Ohio St.2d 192, 197. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for the employee's discharge. Id. If the defendant makes this showing, the burden shifts once more to the plaintiff to demonstrate that the defendant's articulated reasons for the discharge were merely a pretext for impermissible racial discrimination. Id. at 198.
Here, Smith unquestionably has met the first two elements of a prima facie showing, since he is black, and he was discharged. MetroParks argues, however, that Smith cannot prove that he was qualified for the position of park ranger because he was dishonest about his outside employment. The trial court agreed with this argument, and also found that Smith had failed to show that he was replaced by a nonmember of the protected class. Accordingly, the trial court concluded that Smith could not meet his initial burden of establishing a prima facie case of race discrimination. We disagree.
First, under Dresher, supra, MetroParks had the initial burden of presenting evidence showing that Smith had not been replaced by a nonmember of the protected class. MetroParks failed to present any evidence on that issue; thus, the burden never shifted to Smith to demonstrate that he was replaced by, or that his discharge permitted the retention of, a nonmember of the protected class.
Second, as to the "qualified for the position" element of the prima facie case, MetroParks presents a legal argument, to wit: that "[n]o Park Ranger who lies when directly questioned by his superior can be considered `qualified' for the job." We find this argument unpersuasive.
Initially, MetroParks concedes that there is question of fact regarding whether Smith lied about his employment with WHIO, since there was some disagreement at the arbitration hearing as to whether Smith had actually denied being a paid employee there. Nevertheless, MetroParks argues that there is no question that Smith denied being a paid employee of WROU; therefore, MetroParks contends, the record demonstrates that Smith was dishonest about his outside employment. However, Smith testified at the arbitration hearing that he did not intentionally lie to MetroParks about his employment with WROU, stating, among other things, that he did not discover that he was a paid employee at WROU until after the March 7th hearing. Therefore, looking at the evidence in a light most favorable to Smith, a question of fact exists as to whether he intentionally lied to MetroParks about his employment with WHIO or WROU.[1]
Even if Smith was dishonest about whether he was a paid employee at WROU, a question of fact would still exist regarding whether he was "qualified" for the position of park ranger. MetroParks adduced no evidence to show that Smith was technically unqualified for the position of park ranger. Furthermore, while there may be instances where an employee's dishonesty is of such magnitude that it renders a person unqualified to hold a certain position, we cannot say, as a matter of law, that Smith's alleged dishonesty in the instant case is of that magnitude. For instance, the twin purposes of MetroPark's rule requiring its employees to inform it of any outside employment were to allow MetroPark to be able to reach them in case of an emergency, and to prevent a conflict of interest from arising. Smith did inform MetroParks that he was working as a volunteer at WHIO and WROU; this arguably would have allowed MetroParks to contact Smith in case of an emergency, or to discern whether there was any conflict of interest arising from Smith's employment as a park ranger, and his employment with WHIO and WROU.
We hasten to point out that we are merely holding that dishonesty, per se, is not sufficient to render an individual unqualified, as a matter of law, to hold a position as a park ranger. Dishonesty may certainly be a legitimate ground for discharging, or otherwise disciplining, a park ranger.
MetroParks argues that even if Smith could make a prima facie showing with respect to his race discrimination claim, he still cannot prevail, because Smith was terminated for a legitimate reason, i.e., his dishonesty regarding his outside employment, and Smith has failed to point to specific facts showing that this rationale was merely a pretext for unlawful, race discrimination. Again, we disagree.
The evidence in the record showed that Smith filed a discrimination claim against MetroParks with the Ohio Civil Rights Commission, which was settled in May, 1996, when MetroParks agreed to promote Smith to the position of lieutenant. MetroParks terminated Smith less than one year later. Furthermore, in an affidavit attached to his response to MetroPark's summary judgment motion, Smith averred that Captain Jones made decisions affecting park rangers working under his (Smith's) command, without consulting him. Smith also alleged that Jones objected to his use of "comp time," and his receiving overtime, whereas Jones did not object to other employees similarly situated receiving the same benefits. Additionally, Smith alleged that he had been passed over for training opportunities and position advancement in place of white employees. Smith also alleged that he had been ordered to patrol perimeters well outside his zone, even when his own subordinates were in the vicinity and available to patrol the areas, whereas other white employees similarly situated had not been required to do so. The evidence presented by Smith of recent previous acts of racial discrimination taken by his superiors against him, if believed, is sufficient to give rise to a reasonable inference that Smith's termination for his alleged dishonesty regarding his outside employment was merely a pretext for unlawful discrimination, thereby creating a triable issue of fact.
The trial court also erred by granting summary judgment to MetroParks with respect to Smith's equal protection and substantive due process claims brought pursuant to § 1983. In order to prevail on his equal protection and substantive due process claims, Smith must show that MetroParks engaged in "intentional discrimination," Washington v. Davis (1976),426 U.S. 229, 239, which may "be inferred from the totality of the relevant facts." Id. at 242. The same evidence that demonstrates the existence of a triable issue of fact with respect to Smith's race discrimination claim, also demonstrates the existence of a triable issue of fact with respect to his equal protection and substantive due process claims.
MetroParks contends that the allegations in Smith's affidavit are conclusory, and otherwise insufficient to create a triable issue of fact. We disagree.
To be sure, not all of the allegations presented in Smith's affidavit demonstrate the existence of a triable issue of fact. For instance, Smith alleges that white employees who held outside employment were not subjected to an investigation leading, ultimately, to their discharge from employment. However, the investigation of Smith's outside employment was related to sexual harassment charges that MetroParks was obligated to investigate. Furthermore, having outside employment was not the reason that MetroParks gave for terminating Smith, but rather his being dishonest about it. Smith has not alleged that any white employees who were dishonest about having outside employment were retained notwithstanding their dishonesty.
Additionally, the allegations in Smith's affidavit do lack certain specifics. For instance, Smith does not name any white employee who was given preferential treatment over him. However, the lack of this level of specificity goes to Smith's credibility and the weight to be given his affidavit. For purposes of summary judgment, Smith's allegations must be accepted as truthful, and the evidence is not to be weighed. Halley v. Grant Trucking, Inc.
(1990), 67 Ohio App.3d 357, 364. Although the evidence relied upon by Smith to demonstrate the existence of a material issue of fact is relatively weak, summary judgment is to be awarded only with great caution, with all doubts resolved in favor of the nonmoving party, because it deprives the nonmoving party of his day in court. Norris v. Ohio Standard Oil, Co. (1982), 70 Ohio St.2d 1,2.
Finally, the trial court correctly granted summary judgment to MetroParks with respect to Smith's procedural due process claim brought pursuant to § 1983. In order to give an employee procedural due process, the employer must give the employee written or oral notice of the anticipated adverse employment decision, and an opportunity to be heard before the adverse decision goes into effect. Cleveland Board of Ed. v. Loudermill
(1985), 470 U.S. 532, 542.
Here, MetroParks argues that Smith was given his "fullLoudermill rights" in connection with his initial, pre-termination hearing. We disagree. Smith was informed that the charges against him were sexual harassment and supervisor misconduct. When Smith asked for a more detailed description of the charges, he was informed that the sexual harassment charge arose from an allegation that he had made "inappropriate sexual comments" to a female co-worker (Clanin) on February 7, 1997, and that the supervisor misconduct charge arose as a result of allegations that Smith "went home when he was supposed to be on duty," and that he falsified daily logs, by telling officers, "on multiple occasions, * * * to write incorrect times on their daily logs, and sometimes told them to omit things entirely." Nowhere was there any mention of failing to report outside employment.
Nevertheless, Smith was given a full opportunity at the post-termination arbitration hearing to air any grievance he had with respect to MetroParks' actions regarding his termination; Smith has not pointed to any facts showing that he was unduly prejudiced by the termination procedures employed by MetroParks. Accordingly, the trial court's grant of summary judgment with respect to Smith's procedural due process claim (Count III of Smith's Verified Complaint) is Affirmed. The remainder of the trial court's judgment is Reversed.
Smith's First and Second Assignments of Error are sustained to the extent indicated.
 III
Smith's First and Second Assignments of Error having been sustained to the extent indicated, the judgment of the trial court is Affirmed with respect to Smith's procedural due process claim, but Reversed with respect to the remainder of Smith's claims, and this cause is Remanded for further proceedings consistent with this opinion.
WOLFF and KOEHLER, JJ., concur.
(Honorable Richard N. Koehler, Retired from the Twelfth Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
Aaron G. Durden
Peter K. Newman
Stephen Richey
Hon. Barbara P. Gorman
[1] MetroParks did not argue in its motion for summary judgment, nor does it argue on appeal, that Smith should be collaterally estopped from arguing that he was not dishonest about his outside employment in light of the arbitrator's (implied) finding that he had been. In fact, as noted above, MetroParks concedes there is an issue of fact regarding whether Smith was dishonest about being a paid employee of WHIO. Accordingly, we shall not address the issue of whether the arbitrator's finding should preclude relitigation of the issue of whether Smith was dishonest about his outside employment at the March 7th hearing. In any event, it does not change the outcome of our decision, as explained in the proceeding paragraph.