OPINION
{¶ 1} Shirley Mosley appeals from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment in favor of her former employer, Miami Shores of Moraine, on her claim of racial discrimination.
 {¶ 2} The undisputed facts are as follows. *Page 2 
 {¶ 3} Prior to 2003, Mosley worked at the Hickory Creek nursing home in Moraine. On January 1, 2003, Miami Shores purchased Hickory Creek and assumed its operation. Miami Shores offered numerous employees the opportunity to continue their employment, and Mosley did so. She worked the third shift.
 {¶ 4} Miami Shores retained Hickory Woods' employee handbook while it worked to develop its own policies. Pursuant to that handbook, an employee who is not able to report to work as scheduled must contact his or her supervisor as least two hours prior to the beginning of the shift. If the employee does so, the absence is designated as a "call off." One who calls less than two hours before a shift is charged with a "no call/no show." According to the handbook, two no call/no shows within a one year period is grounds for termination. When Miami Shores began its management of the facility, all employees were given a clean record.
 {¶ 5} On October 19, 2003, Mosley called off with less than two hours notice and a no call/no show was recorded on her attendance record. According to Mosley, on December 5, 2003, she also had a no call/no show because her closing on a new house ran longer than expected. This incident is not reflected on her attendance sheet, however. On December 25, 2003, Mosley was schedule to report to work at 7:00 p.m., but her husband called around 6:00 p.m. to say that she was suffering from a sudden illness. Another no call/no show was recorded on this date, and Mosley's employment was terminated the next day. Mosley does not deny that she had at least two no call/no shows within a one year period, in violation of the employee handbook.
 {¶ 6} On June 29, 2005, Mosley filed a complaint against Miami Shores for race discrimination. In February 2006, Miami Shores filed a motion for summary judgment. Mosley *Page 3 
opposed the motion. On April 6, 2006, the trial court granted Miami Shores' motion for summary judgment on all issues raised in the case.
 {¶ 7} Mosley raises one assignment of error on appeal, in which she challenges the trial court's decision to grant summary judgment in favor of Miami Shores. Mosley claims that her work environment was racially charged, that the no call/no show policy was not applied equally to all employees, and that there was a genuine issue of material fact as to Miami Shores' discriminatory intent.
 {¶ 8} The Supreme Court of Ohio has held that, when an individual brings a discrimination claim in Ohio, federal case law interpreting federal civil rights legislation is generally applicable to cases involving violations of Ohio's civil rights legislation. Plumbers Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.
(1981), 66 Ohio St.2d 192, 196, 421 N.E.2d 128. The analytical framework set forth in McDonnell Douglas v. Green (1973), 411 U.S. 792,93 S.Ct. 1817, 36 L.Ed.2d 668, in particular, has been recognized as the starting point for judicial inquiry into a complaint alleging discrimination. Id. at 197. "McDonnell [Douglas] established a flexible formula to ferret out impermissible discrimination in the hiring, firing, promoting, and demoting of employees." Id.
 {¶ 9} Pursuant to McDonnell Douglas, the first step is for a complainant to prove a prima facie case of discrimination. The basic elements of employment discrimination in firing are that: (1) the employee was a member of a statutorily protected class, (2) she was discharged, (3) she was qualified for the position, and (4) she was replaced by, or her discharge permitted the retention of, a person who was not a member of the protected class. See McDonnell Douglas,411 U.S. at 802. See, also, Smith v. Five Rivers MetroParks (1999), *Page 4 
134 Ohio App.3d 754, 761, 732 N.E.2d 422, citing Plumbers, 66 Ohio St.3d at 197;Burzynski v. Cohen (C.A.6, 2001), 264 F.3d 611, 622; Bush v. DictaphoneCorp. (C.A.6, 1998), 161 F.3d 363, 368. The plaintiff has the burden of establishing a prima facie case of discrimination by a preponderance of the evidence. Omobien v. Ohio Civ. Rights Comm. (1993),89 Ohio App.3d 100, 103-104, 263 N.E.2d 634. Where a plaintiff fails to make this prima facie showing, the burden never shifts to the employer to demonstrate a legitimate, nondiscriminatory reason for the discharge. Mays v. BTLSpecialty Resins Corp., Lucas App. No. L-02-1024, 2002-Ohio-3702, citingSmith, 134 Ohio App.3d at 761.
 {¶ 10} If the plaintiff succeeds in establishing a prima facie case of employment discrimination, the burden shifts to the defendant-employer to articulate some legitimate, nondiscriminatory reason for its actions.See Plumbers, 66 Ohio St.3d at 197. If the defendant-employer carries its burden, the plaintiff must demonstrate that the reasons offered by the employer were not the true reasons, but were a pretext for discrimination. Id. at 197-98.
 {¶ 11} In Mosley's case, the trial court concluded that the first three prongs of the prima facie case had been established and were not disputed. However, with respect to the fourth prong — Mosley's claim that she had been replaced by a person who was not a member of the protected class — it concluded that this prong had not been established. Mosley identified Carrie Sparks, a Caucasian woman, as the person who had replaced her. Miami Shores disputed this claim. It contended that Mosley and a Caucasian male were terminated in December 2003, both for no call/no show violations. According to an affidavit from Miami Shores' Human Resources Manager, Rhonda Daugherty, the shifts of both terminated workers were initially distributed among other existing employees, including at least one African-American employee. *Page 5 
About a month later, two new employees — one Caucasian woman (not Sparks) and one African-American woman — were assigned to fill the vacancies created by the firing of Mosley and the Caucasian male. Miami Shores asserted that two additional employees — an African-American woman and a Caucasian woman — left the third shift. These two workers were replaced by an African-American woman and a Caucasian woman, Sparks. Thus, according to Miami Shores, in the few months before Sparks' assignment to the third shift, four employees-two African-Americans and two Caucasians — had left that shift, including Mosley. The four replacement workers had been two Caucasian women and two African-American women.
 {¶ 12} Aside from Mosley's assertion that Sparks was hired to replace her, there is no evidence of such a correlation. Mosley did not provide any basis for her conclusion that Sparks had been her replacement, and she admitted in her deposition that some of the information she related about Sparks had come from rumors. On the other hand, Daugherty's affidavit indicated that two people had been hired in January 2004 to replace the two third-shift employees who had been fired in December, including Mosley. Sparks was hired later, after two additional employees had been terminated. Moreover, Daugherty's affidavit establishes that two of the four replacement employees were African-American.
 {¶ 13} In our view, Mosley's assertions, standing alone, were insufficient to overcome Miami Shores' properly supported motion for summary judgment, particularly on the issue of whether her replacement had been outside the protected class. "[W]hen the moving party puts forth evidence tending to show that there are no genuine issues of material fact, the nonmoving party may not avoid summary judgment solely by submitting a self-serving affidavit containing no more than bald contradictions of the evidence offered by the moving party. To conclude *Page 6 
otherwise would enable the nonmoving party to avoid summary judgment inevery case, crippling the use of Civ. R. 56 as a means to facilitate `the early assessment of the merits of claims, pre-trial dismissal of meritless claims, and defining and narrowing issues for trial."McPherson v. Goodyear Tire Rubber Co., Summit App. No. 21499,2003-Ohio-7190. See, also, Porter v. Saez, Franklin App. No. 03AP-1026,2004-Ohio-2498 at ¶ 43.
 {¶ 14} In failing to create a genuine issue of material fact that she was replaced by someone outside the protected class, Mosley failed to establish a prima facie case of employment discrimination. Accordingly, summary judgment was appropriate.
 {¶ 15} Mosley also claims that the alleged basis for her discharge was not applied equally to all persons regardless of race. In essence, this argument is an effort to show that the legitimate, non-discriminatory reason offered by Miami Shores for her discharge was a pretext for discrimination. Because Mosley failed to make a prima facie case of racial discrimination, the burden never shifted to Miami Shores to set forth non-discriminatory reasons for her termination. However, we will briefly discuss this argument.
 {¶ 16} In her affidavit, Mosley attempted to establish discriminatory conduct by her supervisors by asserting that she was "aware of racial comments made by management personnel Ken Daily and Steve Tahy and by a nurse supervisor. She further claimed that Tahy was ultimately responsible for making the decision to fire an employee. In another affidavit, former Miami Shores employee Linda McLaughlin asserted that she had heard "persons in supervision" make derogatory and discriminatory remarks about black people, that white employees with more egregious attendance records than Mosley were not terminated, and that she had been asked about employees' race when discussing termination of an employee with *Page 7 
"management."
 {¶ 17} With respect to this evidence, the trial court noted that it was unclear whether Mosley had first hand knowledge of the comments reported in her affidavit. It also observed that Mosley's affidavit contradicted her deposition testimony that her supervisor, Tahy, had treated her well. The court concluded that Mosley's evidence was "simply insufficient to establish that Miami Shores' proferred reasons did not actually motivate her discharge." The court found McLaughlin's affidavit insufficient to establish discriminatory conduct in Mosley's firing.
 {¶ 18} Mosley claims that her evidence did create a genuine issue of material fact as to whether she had been disciplined more harshly than other employees because of her race. We agree with the trial court's assessment of the evidence.
 {¶ 19} Mosley made the following statement in her affidavit:
 {¶ 20} "During my employment and shortly before my termination, I am aware management personnel and supervisors made racial comments about black employees. Management personnel Ken Daily and Steve Taye [sic] comment `that these black people need to be thankful that we gave them jobs. * * *'"
 {¶ 21} Mosley also claimed that Claudia, her RN supervisor, had pointed a finger in her face, said that she (Mosley) "was less than her," and referred to nurses' assistants as "you black people." She asserted that Tahy was responsible for hiring and firing decisions, and that Claudia had input into those decisions.
 {¶ 22} In her deposition, Mosley painted a somewhat different picture of her relationships at Miami Shores. She testified about Claudia's "racial behavior" and the fact that *Page 8 
Claudia would talk down to nursing assistants and "[throw] her fingers in their face." However, she indicated that Claudia engaged in similar behavior with white nurses who were intimidated by her. Mosley's deposition testimony indicated that such behavior had been directed toward other nurses' assistants, but it did not indicate that such behavior had ever been directed toward her. When she was specifically asked at her deposition who had had input into Tahy's decision to fire her, Mosley mentioned an assistant director and a couple of nurses, but not Claudia. With respect to Tahy, Mosley testified that he had been very understanding with her about some instances of tardiness because she was working a lot of overtime, and that her tardiness had no bearing on her termination. She also admitted that Tahy had cited only her two no call/no show incidents as the reason for her termination. Her only claim in the deposition that Daily or Tahy had made racial slurs refered to incidents of which she did not have first hand knowledge.
 {¶ 23} The Supreme Court of Ohio has held that an "affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient explanation, create a genuine issue of material fact to defeat the motion for summary judgment." Byrd v. Smith, 110 Ohio St.3d 24, 24-25, 2006-Ohio-3455,850 N.E.2d 47. We recently elaborated on the reasons for this rule where the testimony of a party witness at a deposition is subsequently contradicted by an affidavit:
 {¶ 24} "A contradictory affidavit of a party witness should be disregarded. The party witness generally has the benefit of counsel to protect him from inadvertent misstatements. Therefore, when a party witness has given certain detrimental answers in a deposition, but subsequently, upon advice of counsel, sets forth averments in an affidavit in order to `clarify' or `correct' what was said in the deposition, the subsequent affidavit should be disregarded. The *Page 9 
affidavit is being used as a self-serving device to avoid damaging admissions made by the party witness during his deposition." Gessner v.Schroeder, Montgomery App. No. 21498, 2007-Ohio-570, at ¶ 55, citingClemmons v. Yaezell (Dec. 29, 1988), Montgomery App. No. 11132.
 {¶ 25} Mosley's statements in her affidavit that Claudia had influenced firing decisions at Miami Shores and had made statements directly to her that reflected her sense of superiority contradicted her deposition testimony. Because she offered no explanation for this contradiction, the assertions in her affidavit could not create a genuine issue of material fact.
 {¶ 26} In her deposition, Mosley admitted, indirectly, that she did not have first hand knowledge of the racial slurs that Daily and Tahy had allegedly spoken. Similarly, her affidavit states only that she "[was] aware" of racial comments. Because she did not assert that she had first-hand knowledge of these statements, as required by Civ. R. 56(E), these statements did not create a genuine issue of material fact and prevent summary judgment.
 {¶ 27} Finally, Mosley relied on the affidavit of McLaughlin, her coworker at Miami Shores. McLaughlin claimed that "supervisors" at Miami Shores made discriminatory remarks about black people and that black people were harassed and taken advantage of by management. She also stated her opinion that Mosley's termination was unfair and that white employees with "more egregious attendance violations" had not been terminated. McLaughlin specifically referenced one Miami Shores employee, Julie Moore, whom she claimed called in sick on numerous occasions and was not terminated.
 {¶ 28} Julie Moore was a respiratory therapist, not a nurse, and therefore was not similarly situated to Mosley. Further, McLaughlin's affidavit indicated that Moore had called in sick but did not indicate whether her absences had violated the no call/no show rule. As the trial *Page 10 
court noted, no attendance records were offered to substantiate the alleged "egregious attendance records" of white employees mentioned in McLaughlin's affidavit or to show that these employees were similarly situated to Mosley. The court characterized the allegations as "nothing more than speculation."
 {¶ 29} Although we would hestitate to call McLaughlin's allegations "speculation," we agree with the trial court that they failed to create a genuine issue of material fact that similarly situated individuals were treated differently from Mosley based on race. They were too lacking in specificity to establish that other employees to which the affidavits referred were similarly situated to Mosley or that their violations of the policy were comparable.
 {¶ 30} The trial court did not err in granting summary judgment in favor of Miami Shores.
 {¶ 31} The assignment of error is overruled.
 {¶ 32} The judgment of the trial court will be affirmed.
 BROGAN, J. and DONOVAN, J., concur. *Page 1