[Cite as *Gregory v. Towne Properties, Inc.*, 2015-Ohio-443.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

|  |  |  |
|---|---|---|
| STEVEN W. GREGORY | : | |
| | : | |
| *Plaintiff-Appellant* | : | Appellate Case No. 26410 |
| | : | |
| v. | : | Trial Court Case No. 2013-CV-07846 |
| | : | |
| TOWNE PROPERTIES, INC., ET AL. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellee* | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 6th day of February, 2015.

. . . . . . . . . .

SEAN BRINKMAN, Atty. Reg. No. 0088253, AARON G. DURDEN, Atty. Reg. No. 0039862, 10 West Monument Avenue, Dayton, Ohio 45402
    Attorneys for Plaintiff-Appellant

ROBERT W. HOJNOSKI, Atty. Reg. No. 0070062, IAN MITCHELL, Atty. Reg. No. 0090643, 525 Vine Street, Suite 1700, Cincinnati, Ohio 45202
    Attorneys for Defendant-Appellee

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Plaintiff-Appellant, Steven Gregory, appeals from a trial court decision granting summary judgment in favor of Defendants-Appellees, Towne Properties, Inc., Town Properties, LTD., and Park Layne Apartments (collectively "Park Layne"). In support of his appeal, Gregory contends that the trial court erred in denying his Civ.R. 56(F) request. Gregory also contends that the trial court erred in granting summary judgment in favor of Park Layne.

{¶ 2} We conclude that the trial court did not err in either regard. First, Gregory failed to comply with the requirements of Civ.R. 56(F). In addition, there were no genuine issues of material fact regarding Park Layne's liability for the injury sustained by Gregory. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 3} The following undisputed facts are revealed in the materials submitted in connection with Park Layne's motion for summary judgment. Between February 2008 and June 1, 2013, Steven Gregory was employed as a newspaper deliveryman. During that time, he delivered newspapers to residents of Park Layne seven days a week. Gregory had a key to the apartment building. As soon as Gregory arrived each day, he placed a newspaper on the doorman's desk. He then took the elevator to the 11th floor and began delivering newspapers. Gregory then worked his way down to the first floor.

{¶ 4} On June 1, 2013, Gregory followed his usual routine, beginning with deliveries on the 11th floor. He took the elevator from the third to the second floor, and

then took the back stairs from the second to the first floor. The stair-steps were not enclosed, but consisted of slats. The stairs were also carpeted and had a handrail, which Gregory usually used when he came down the stairs. Before this day, Gregory had never had any issues with the stairs and was unaware of any other accidents that had previously happened on the stairs.

{¶ 5} As Gregory descended the stairway, his hand was on the handrail. When he was about half-way down, or about 8 to 9 feet from the bottom, he placed his foot on a step and it collapsed. Gregory fell backwards, hit his head, and landed on his back. After falling, Gregory stayed there for about seven minutes because he was hurt and was not able to get up. Eventually, he got up and went to the front desk, where he showed his hand, which was bleeding, to the maintenance man, Greg, and the doorman, James Williams. Gregory told the men what had happened, and they were shocked. They could not believe that the stairs had caved in.

{¶ 6} Park Layne's maintenance people roped off the stairway while Gregory was still there. Gregory then left, and went to the hospital for treatment the following day. When Gregory returned to Park Layne a few days later to deliver newspapers, the staircase was still roped off. Park Layne had put up cones and a sign indicating that the stairway was closed.

{¶ 7} The manager of Park Layne, Jackie Murray, indicated that maintenance personnel regularly perform visual inspections of all the staircases, including the internal staircase between the first and second floors of the building. Murray further stated that if any problem or damage is identified during inspections, maintenance staff would fill out a report. To Murray's knowledge, no reports had ever been made relating to structural

problems, damage, or dangers on the Park Layne staircases. Further, other than the incident involving Gregory, no one had ever had an incident involving steps breaking, collapsing, or otherwise falling. In addition, Park Layne had never received a report from any tenant, guest, or employee stating that the stairs were dangerous, damaged, or needed repair.

{¶ 8} As soon as the accident was reported, Park Layne secured the staircase, put up barriers to prevent others from using the staircase, and placed signs telling others not to use the staircase. Park Layne also arranged for the broken step to be repaired as soon as possible.

{¶ 9} In December 2013, Gregory filed suit against Park Layne, alleging that its negligence had caused him injury when he was on the premises on June 1, 2013, as a business invitee. The trial court set deadlines for completion of discovery, summary judgment motions and responses, and trial. After conducting discovery, Park Layne filed a motion for summary judgment on August 6, 2014, which was the deadline for filing such motions. On August 25, 2014, Gregory filed a Civ.R. 56(F) motion, requesting that the court provide him with extra time to respond to the summary judgment motion. Although Gregory indicated in the motion that he needed additional time for discovery, the motion was not supported by an affidavit.

{¶ 10} The trial court overruled Gregory's motion on August 25, 2014, based on Gregory's failure to comply with Civ.R. 56(F). Gregory then filed his response to the summary judgment motion out of time, and was permitted to do so. After the trial court granted summary judgment in favor of Park Layne, this appeal followed.

## II. Denial of Civ.R. 56(F) Motion

{¶ 11} Gregory's First Assignment of Error states that:

The Trial Court Erred in Denying Appellant/Plaintiff's Motion Pursuant to Rule 56(F).

{¶ 12} Under this assignment of error, Gregory contends that the trial court's denial of his Civ.R. 56(F) motion was unreasonable because he needed additional time to present facts essential to support his opposition to summary judgment. In this regard, Gregory notes that he had just received Park Layne's supplemental response to his request for production of documents on July 31, 2014, and needed to conduct depositions of current and former employees of Park Layne. Gregory also argues that he needed additional time because his expert had not had the opportunity to conduct an on-site inspection of the premises.

{¶ 13} Civ.R. 56(F) provides that:

Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.

{¶ 14} "The trial court's determination of a Civ.R. 56(F) motion is a matter within its sound discretion. * * * Accordingly, the trial court's determination will not be reversed absent an abuse of that discretion." (Citation omitted.) *Scaccia v. Dayton Newspapers, Inc.*, 170 Ohio App.3d 471, 2007-Ohio-869, 867 N.E.2d 874, ¶ 13 (2d Dist.) An abuse of

discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 15} In *Doriott v. MVHE, Inc.*, 2d Dist. Montgomery No. 20040, 2004-Ohio-867, we stated that:

> Pursuant to Civ.R. 7(A), the grounds for a Civ.R. 56(F) motion for a continuance must be stated with particularity. In addition, Civ.R. 56(F) requires the motion to be supported by an affidavit containing "sufficient reasons why (the nonmoving party) cannot present by affidavit facts sufficient to justify its opposition" to the summary judgment motion. *Id.* "Mere allegations requesting a continuance or deferral of action for the purpose of discovery are not sufficient reasons why a party cannot present affidavits in opposition to the motion for summary judgment." *Gates Mills Inv. Co. v. Pepper Pike* (1978), 59 Ohio App.2d 155, 169, 392 N.E.2d 1316. "There must be a factual basis stated and reasons given within an affidavit why a party cannot present facts essential to its opposition to the motion." Baldwin's Ohio Practice, Klein/Darling, Civil Practice, Vol. 2, Section At 56-14, at p. 564.

> A party who seeks a continuance for further discovery is not required to specify what facts he hopes to discover, especially where the facts are in the control of the party moving for summary judgment. *See, e.g. Booth v. Security Mutual Life Insurance Co.* (1957), 155 F.Supp. 755. However, the court must be convinced that there is a likelihood of discovering some such

facts. Further, a claim that the party has not completed discovery is more likely to be rejected by the court where the party has not shown some diligence in attempting discovery. *See Southern Rambler Sales, Inc. v. American Motors Corp.* (1967), 375 F.2d 932.

*Doriott* at ¶ 40-41.

{¶ 16} As an initial matter, Gregory failed to comply with Civ.R. 56(F), since he did not file any affidavits in support of his motion. We also note that Gregory filed this action in December 2013, and would have been aware then of the need to discover what knowledge Park Layne had about the prior condition of the staircase. That information could only have come through employees or agents of the involved corporations.

{¶ 17} According to the Civ.R. 56(F) motion, Gregory received Park Layne's original discovery responses on May 9, 2014, well in advance of the summary judgment deadline. If Park Layne failed to completely comply with discovery, Gregory had ample time to file a motion and bring the matter to the trial court's attention. He did not do so. In addition, the record is devoid of any evidence that Gregory made any attempt to schedule depositions after receiving discovery responses, which presumably would have revealed names of pertinent employees or agents, if Gregory were not already aware of them.[1]

{¶ 18} Furthermore, the record, again, fails to reveal any effort on Gregory's part to

---

[1] In fact, Gregory's deposition indicates that he had been delivering to Park Layne for several years, and knew the manager, doorman, and maintenance people at the time of his fall. Gregory Deposition, pp. 9, 16-18, and 21-23. He also continued to deliver papers there after the accident, including at the time of his deposition in July 2014. *Id.* at pp. 9, 18, and 37. However, there is no indication that Gregory attempted to schedule depositions of any of these individuals prior to filing his Civ.R. 56(F) motion in August 2014.

schedule an appointment for his expert to view the premises.   In view of these facts, and Gregory's failure to adequately support the Civ.R. 56(F) motion by affidavit, as required, we cannot conclude that the trial court abused its discretion by overruling the motion.

{¶ 19} Accordingly, the First Assignment of Error is overruled.

III. Grant of Summary Judgment

{¶ 20} Gregory's Second Assignment of Error states that:

The Trial Court Erred By Granting Summary Judgment in Favor of Defendant.

{¶ 21} Under this assignment of error, Gregory contends that the trial court erred in granting summary judgment in Park Layne's favor, based on the applicability of the doctrine of res ipsa loquitur.   According to Gregory, Park Layne had exclusive management and control of the building, including the stairwell, and the accident would not have happened if ordinary care had been used.

{¶ 22}   With respect to summary judgment, "[a] trial court may grant a moving party summary judgment pursuant to Civ.R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor."   (Citation omitted.)   *Smith v. Five Rivers MetroParks*, 134 Ohio App.3d 754, 760, 732 N.E.2d 422 (2d Dist.1999).   "We review summary judgment decisions de novo, which means that we apply the same standards as the trial court."   (Citations omitted.) *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶

16 (2d Dist.)

{¶ 23} Gregory sued Park Layne on grounds of negligence, asserting that Park Layne breached its duty of care to him as a business invitee. "In order to establish actionable negligence, a plaintiff must demonstrate the existence of a duty, a breach of the duty, and an injury proximately resulting therefrom." *Turk v. NovaCare Rehab. of Ohio*, 8th Dist. Cuyahoga No. 94635, 2010-Ohio-6477, ¶ 16, citing *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 680, 693 N.E.2d 271 (1998).

{¶ 24} An occupier or owner of premises "owes business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger." (Citation omitted.) *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 480 N.E.2d 474 (1985). This duty includes the owner's obligation "to exercise reasonable care to warn patrons of known hazards." *Anderson v. Elifritz, Inc.*, 2d Dist. Montgomery No. 12575, 1991 WL 227616, *1 (July 9, 1991). An occupier or owner "is not, however, an insurer of the customer's safety." *Paschal* at 203. *Accord Blair v. Vandalia United Methodist Church*, 2d Dist. Montgomery No. 24082, 2011-Ohio-873, ¶ 15.

{¶ 25} "Where negligence revolves around the question of the existence of a hazard or defect, the legal principle prevails that notice, either actual or constructive, of such hazard or defect is a prerequisite to the duty of reasonable care." *Allen v. Memering,* 2d Dist. Greene No. 06-CA-16, 2007-Ohio-1506, ¶ 8 , citing *Heckert v. Patrick*, 15 Ohio St.3d 402, 473 N.E.2d 1204 (1984). "Constructive notice can be proven by direct or circumstantial evidence. * * * Circumstantial evidence is the proof of certain facts and circumstances from which one may infer other facts which, according to common

experience, reasonably follow." *Springhart v. Darden Restaurants, Inc.*, 2d Dist. Montgomery No. 19439, 2003-Ohio-919, ¶ 11, quoting *Youngerman v. Meijer, Inc.*, 2d Dist. Montgomery No. 15732, 1996 WL 531628, *2 (Sept. 20, 1996).

{¶ 26} In the case before us, the undisputed facts indicate that Park Layne did not have either actual or constructive notice of a defect in the stairs. Instead, the undisputed evidence indicates that Park Layne performed regular inspections of the stairs, and had no prior knowledge of a defect. In addition, no guest, tenant, or employee, had reported problems with the stairs before Gregory's accident, nor had anyone previously had an accident on the stairs. Under the circumstances, we fail to see what more Park Layne could have done to protect invitees.

{¶ 27} Gregory argues that under the doctrine of res ipsa loquitur, the accident would not have happened in the absence of negligence. The trial court rejected this theory.

{¶ 28} "Res ipsa loquitur is a rule of evidence which permits, but does not require, the jury to draw an inference of negligence in a case where the instrumentality causing injury is shown to have been within the exclusive control and management of the defendant, and where the circumstances attending the injury were of such a character in themselves as to warrant the conclusion that a lack of ordinary care on the part of the defendant was responsible for the occurrence or condition causing the injury." *Renneckar v. Canton Terminal Restaurant*, 148 Ohio St. 119, 73 N.E.2d 498 (1947), paragraph one of the syllabus.

{¶ 29} "[T]he rule of res ipsa loquitur is not a substantive rule of law, or one of liability, but is a rule of evidence which permits the trier of facts to infer negligence after

the trial court determines, as a matter of law, the application of the rule." (Citations omitted.) *Moore v. Denune & Pipic, Inc.*, 26 Ohio St.2d 125, 126, 269 N.E.2d 599 (1971). "Where proof of knowledge is required, ruling out res loquitur is based upon the premise that in res ipsa loquitur situations the defendant must have exclusive management and control." *Id.* at 128.

{¶ 30} *Moore* involved a situation similar to the present, in which the plaintiff was injured when the staircase in a house in which he was working collapsed. *Id.* at 125. The Supreme Court of Ohio concluded that res ipsa loquitur did not apply in an action brought against the owner. In this regard, the court observed that

> In the instant case, as in the storekeeper cases * * * many persons had access to the premises and used the stairs. To apply the rule of res ipsa loquitur under such circumstances would violate the principle that defendant is not an insurer. Defendant was not required to be a contractor, inspector and watchman at any and all times.

(Citations omitted.) *Moore* at 128. *Accord Cramer v. Wi I Hsu, M.D., Co.*, 11th Dist. Trumbull No. 92-T-4648,1992 WL 366896, *3 (Dec. 11, 1992) ("exclusive control cannot be found if the instrumentality is used by the public."); *Brown v. Univ. Hosp. of Cleveland*, 8th Dist. Cuyahoga No. 57101, 1990 WL 75203, *3 (June 7, 1990) (in case involving collapsing chair, court noted that "[w]here, as here, the defendants' chair unit is located in a public area with many people using it, there is no exclusive control and management and the doctrine of res ipsa loquitur is inapplicable."); and *Turk,* 8th Dist. Cuyahoga No. 94635, 2010-Ohio-6477, ¶ 45 (refusing to apply res ipsa loquitur in case where lockers fell on plaintiff. The court noted that the lockers were being used by others besides the

plaintiff, and, therefore, were not under the facility's exclusive management and control.)

**{¶ 31}** Based on the preceding discussion, we conclude that the trial court did not err in rejecting the application of res ipsa loquitur. As was noted below, many people used the stairway, and there is no inference that the accident could not have happened in the absence of ordinary care on the part of Park Layne. There are many reasons why a step could have failed, including misuse by the public, or defects in the original construction, for which Park Layne would not have been responsible. Accordingly, the Second Assignment of Error is overruled.


## IV. Conclusion

**{¶ 32}** All of Gregory's assignments of error having been overruled, the judgment of the trial court is affirmed.


. . . . . . . . . . . . .


FAIN, J. and DONOVAN, J., concur.


Copies mailed to:

Sean Brinkman
Aaron G. Durden
Robert W. Hojnoski
Ian Mitchell
Hon. Mary Katherine Huffman