[Cite as *Mfrs. Equip. Co. v. StarStone L.L.C.*, 2016-Ohio-3276.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| MANUFACTURERS EQUIPMENT COMPANY | : | |
| | : | |
| | : | Appellate Case No. 26725 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2013-CV-3660 |
| v. | : | |
| | : | (Civil Appeal from |
| STARSTONE LLC, et al. | : |  Common Pleas Court) |
| | : | |
| Defendants-Appellants | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 3rd day of June, 2016.

. . . . . . . . . . .

MICHAEL W. SANDNER, Atty. Reg. No. 0064107, Pickrel, Schaeffer & Ebeling, 2700 Kettering Tower, Dayton, Ohio 454236
        Attorney for Plaintiff-Appellee

THOMAS P. WHELLEY, II, Atty. Reg. No. 0010493, and SUSAN D. SOLLE, Atty. Reg. No. 0071269, 1 South Main Street, Suite 1300, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} StarStone, LLC and E. Khashoggi Industries, LLC (EKI) appeal from the entry of summary judgment against them on the claims for breach of contract asserted by

Manufacturers Equipment Company (MECO). We reverse and remand.

## Facts and Procedural History

{¶ 2} StarStone is the exclusive licensee of the process patented by EKI used to make concrete building materials look like granite. StarStone entered into a sublicense agreement with MECO in March 2009 that allowed MECO to build equipment for companies that wanted to make products using the patented process. A subsidiary of MECO, MECO Russia LLC, contracted with the Russian company Kalugaglavsnab (KGS) to build an equipment production line. The line comprised two sublines—a main line and a coating line. On October 1, 2010, MECO, StarStone, and EKI entered into a "Unit Purchase Agreement" (UPA) in which StarStone agreed to purchase MECO Russia, and another subsidiary, MECO Hong Kong LLC, for $110,000. Paragraph 2(c) of the UPA provides that StarStone will pay the balance of the purchase price "[w]ithin three (3) days after commissioning of the Russian main and coating lines." EKI agreed to guarantee timely and complete performance of StarStone's contractual obligations.

{¶ 3} In November 2011, Adam Miller, the president of MECO, sent an email to Simon Hodson, the CEO of StarStone,[1] asking whether the Russia line had been commissioned and pointing out that, under the UPA, payment is due within three days of commissioning. Randall Smith, StarStone's COO, responded the next day saying that the coating line had been commissioned and that it had sent KGS an invoice for the lines but had not received payment. Two weeks later, in response to an email from Miller asking about payment, Smith told Miller that KGS still had not paid StarStone, an event that we

---

[1] Hodson also appears to be the CEO of EKI, as he signed the UPA for EKI as CEO.

believe is irrelevant to StarStone's or EKI's obligation to pay. Almost a year and a half later, in April 2013, Miller sent Hodson a letter congratulating him on completing the KGS project and pointing out that payment was now due under the terms of the UPA.

{¶ 4} StarStone did not pay. So on June 19, 2013, MECO filed an action for breach of contract against StarStone and EKI, StarStone's guarantor. The parties filed cross-motions for summary judgment. In December 2014, MECO filed a reply to the defendant's memorandum in opposition to MECO's motion for summary-judgment. Attached to the reply is a previously unsubmitted affidavit of the president of MECO identifying an attached document titled "Deed of Equipment Line Commissioning," dated April 6, 2010, and bearing the signatures of the director general of KGS and Adam Miller. The Deed states that the equipment production line is operating to specifications and is accepted. The defendants immediately moved to strike the reply, arguing that it was filed untimely and improperly presents new evidence.

{¶ 5} In March 2015, the trial court sustained MECO's summary-judgment motion and overruled the defendants' summary-judgment motion. The court found that the condition precedent in paragraph 2(c) of the UPA had been satisfied—the Russian lines had been commissioned—triggering StarStone's obligation to pay MECO. Also, the trial court overruled, without comment, the defendants' motion to strike.

{¶ 6} The defendants appealed.

**Analysis**

{¶ 7} StarStone (which we now use to refer to the defendants jointly) presents two assignments of error for our review. The first alleges that the trial court erred by granting MECO's motion for summary judgment. And the second alleges that the trial court erred

by overruling StarStone's motion to strike.

**{¶ 8}** "We review summary judgment decisions de novo, which means that we apply the same standards as the trial court." (Citations omitted.) *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.). "A trial court may grant a moving party summary judgment pursuant to Civ. R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." (Citation omitted.) *Smith v. Five Rivers MetroParks*, 134 Ohio App.3d 754, 760, 732 N.E.2d 422 (2d Dist.1999).

**{¶ 9}** " '[T]he primary function of a trial court in reviewing a motion for summary judgment is to determine whether triable issues of fact exist, not the sufficiency of those facts.' " (Citation omitted.) *Allstate Ins. Co. v. Pittman*, 2d Dist. Montgomery No. 26330, 2015-Ohio-699, ¶ 22, quoting *Napier v. Brown*, 24 Ohio App.3d 12, 13-14, 492 N.E.2d 847 (2d Dist.1985). Resolving issues of credibility and ambiguity and conflicts in the evidence are " 'outside the province of a summary judgment hearing.' " *Id.*, quoting *Napier* at 14. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-252.

**{¶ 10}** MECO claims that StarStone breached paragraph 2(c) of the Unit Purchase

Agreement. This provision pertinently provides that StarStone must pay MECO "[w]ithin three (3) days after commissioning of the Russian main and coating lines." StarStone admits that the coating line was commissioned[2] but argues that the main line has never been commissioned. Whether the main line has been commissioned is plainly a material fact. The issue here is whether a genuine issue exists as to this fact.

{¶ 11} The evidence shows a disagreement as to whether the main line was commissioned. Adam Miller avers that the main line was commissioned on April 6, 2010. (Nov. 14, 2014 Miller Aff. ¶ 5). But Randall Smith avers that it was never commissioned: "Because the main line equipment never generated product that satisfied the specifications in the KGS Contract, KGS would not sign off on the main line. The failure to satisfy the specifications and obtain customer acceptance establishes that the main line was never commissioned." (Nov. 25, 2014 Smith Aff. ¶ 17). StarStone cites Smith's November 17, 2011 email to Miller as evidence that the main line was not commissioned. In the email, Smith says that StarStone had "demonstrated a quality product exceeding their [KGS's] standards in both the base line and the coating and printing line." (Exhibit B, Nov. 14, 2014 Miller Aff.). But Smith also says that they "still have a train wreck in the GSP saw and handling system." (*Id.*).

{¶ 12} StarStone also cites emails from 2013 between it and KGS that refer to problems with the production line. This evidence, though, has little to do with whether the main line was commissioned in 2010. The line could have been tested, found to meet

---

[2] Randall Smith states in his affidavit that the coating line was commissioned: "We did receive at that time [around November 3, 2011] a sign off by KGS on the coating and printing lines." (Nov. 25, 2014 Smith Aff. ¶ 15). We note that Walter Favruzzo, StarStone's vice president of engineering, states in his affidavit that "[t]o date, the Russian main and coating lines have not yet been commissioned," (Favruzzo Aff. ¶ 19).

specifications, accepted, and put in use and later developed problems. Curiously, if that is what occurred, it may be the obligation of MECO Russia, now owned by StarStone, to remedy.

{¶ 13} On the issue of whether the main line was commissioned, the above-cited affidavits, along with the 2011 email, show a sufficient disagreement to preclude summary judgment. But the "Deed of Equipment Line Commissioning" attached to MECO's summary-judgment reply could conclusively establish that the main line was in fact commissioned in 2010, making summary judgment for MECO appropriate. The Deed states in paragraph 4 that "[t]he Equipment line trial start-up and checkout testing passed successfully and the plant is ready for production" and states in paragraph 8 that "[t]he Equipment line for production * * * is hereby accepted under the stated-above conditions and signatures of the Parties." The Deed bears the signatures of the director general of KGS and Adam Miller and is dated April 6, 2010—the date that Miller avers the main line was commissioned. StarStone filed a motion to strike MECO's reply, arguing that the reply was untimely because MECO filed it two days late and without leave of court. StarStone also argued that Ohio law bars a party from presenting a new argument or new evidence in a reply. It pointed out that MECO had plenty of opportunities to submit the Deed since filing its complaint but never did. Of course StarStone could have moved for leave to respond to the affidavit and deed of commissioning, but they did not. The trial court did not refer to the Deed in its decision, and the court overruled StarStone's motion to strike without explanation. Overruling the motion, StarStone alleges in the second assignment of error, was an abuse of discretion.

{¶ 14} StarStone is correct that a party "is barred from raising new arguments and

offering evidence for the first time on reply," *In re Fuel Adjustment Clauses for Columbus S. Power Co. & Ohio Power Co.*, 140 Ohio St.3d 352, 2014-Ohio-3764, 18 N.E.3d 1157, ¶ 37. "The danger * * * is that the opposing party does not have an opportunity to respond and may be subjected to summary judgment by ambush." (Citations omitted.) *Baker v. Coast to Coast Manpower, L.L.C.*, 3d Dist. Hancock No. 5-11-36, 2012-Ohio-2840, ¶ 35. *See also Ohio Receivables, L.L.C. v. Williams*, 2d Dist. Montgomery No. 25427, 2013-Ohio-960, ¶ 25, fn. 3 (saying that "Civ.R. 56 does not permit a party to obtain summary judgment 'by ambush' "). So if a new argument is raised or new evidence is offered in a reply, "the proper procedure is to strike the reply * * * or, alternatively, to allow the opposing party to file a surreply." (Citations omitted.) *Baker* at ¶ 35. *See also Charlesgate Commons Condominium Assn. v. W. Res. Group*, 6th Dist. Lucas No. L-14-1039, 2014-Ohio-4342, ¶ 13 (saying that "when a new argument is presented in a reply brief, the non-moving party should move to strike the reply or be allowed to file a surreply"); *Smith v. Ray Esser & Sons, Inc.*, 9th Dist. Lorain No. 10CA009798, 2011-Ohio-1529, ¶ 15 (saying that "a court may properly strike a reply that raises new arguments, or it may allow time for respondents to file a surreply").

{¶ 15} In this case, we think that, though StarStone never asked, the trial court should have given it an opportunity to file a surreply. We view the Deed of commissioning as a critical piece of summary-judgment evidence that should be considered. And in the motion to strike StarStone never quite says that the Deed is not authentic. So we will remand this case to give StarStone an opportunity to file a surreply. The trial court should then determine whether StarStone's response satisfies its burden to "set forth specific facts showing that there is a genuine issue for trial," Civ.R. 56(E). If StarStone fails to

satisfy this burden, the court may enter summary judgment for MECO.

## Conclusion

{¶ 16} Both of StarStone's assignments of error are sustained. The trial court's judgment is reversed, and this case is remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

DONOVAN, P.J., and WELBAUM, J., concur.

Copies mailed to:

Michael W. Sandner
Thomas P. Whelley, II
Susan D. Solle
Hon. Richard Skelton