SCACCIA et al., Appellants,

v.

DAYTON NEWSPAPERS, INC. et al., Appellees.

[Cite as *Scaccia v. Dayton Newspapers, Inc.,* 170 Ohio App.3d 471, 2007-Ohio-869.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21474.

Decided March 2, 2007.

472

John J. Scaccia, for appellants.

Robert P. Bartlett, Thomas R. Kraemer, and Michele A. Murphy, for appellees.

---

GRADY, Judge.

{¶ 1} Plaintiffs, John and Cynthia Scaccia, appeal from a summary judgment for defendants, Dayton Newspapers, Inc., and a number of its employees, (collectively, "Dayton Newspapers"), on the Scaccias' claims for relief alleging defamation.

{¶ 2} The essential facts out of which the litigation arose were set out in a prior appeal: *Scaccia v. Dayton Newspapers, Inc.* (Nov. 30, 2001), Montgomery App. Nos. 18435 and 18729, 2001 WL 1517043. They are that over a period of several years, while John Scaccia was chief of the criminal section of the City of Dayton's Law Department, and in that capacity had overall responsibility for criminal prosecutions brought by the city, he and Cynthia Scaccia, who was then his wife, benefited from almost $400,000 that was transferred to them by an elderly neighbor for whom Cynthia Scaccia held a durable power of attorney for health care. Cynthia Scaccia also assisted the man in his personal affairs, preparing checks for him to sign, including transfers that benefited the Scaccias.

{¶ 3} The foregoing matters were reported to authorities by the neighbor's bank. A criminal investigation was initiated by the Montgomery County Prosecutor's Office. That investigation was inconclusive, but as a result a competency hearing was held in the probate division of the court of Common Pleas of Montgomery County. After hearing evidence, the probate court found that the elderly man was not incompetent, but it limited the amounts he could give any one person, including the Scaccias, and the Scaccias' further involvement in his affairs.

{¶ 4} Dayton Newspapers published reports of these events in a series of articles in its newspaper, the Dayton Daily News. The publications consisted almost entirely of reports concerning testimony gleaned from a transcript of the proceedings in the probate court. Those reports were the basis on which the Scaccias commenced their defamation action against Dayton Newspapers.

{¶ 5} Dayton Newspapers moved to disqualify the Scaccias' trial attorney, indicating that it would call him as its witness at trial. The trial court granted a companion motion that Dayton Newspapers also filed and stayed discovery until the disqualification motion was decided. Subsequently, the court granted the disqualification motion and the Scaccias appealed. We reversed the disqualification order on appeal. *Scaccia v. Dayton Newspapers, Inc.*

{¶ 6} After the case was remanded, Dayton Newspapers moved for a partial summary judgment on whether the Scaccias are public figures or limited-purpose public figures, for purposes of their defamation claims, under the rule of *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686. A finding that they are would require the Scaccias to prove that Dayton Newspapers acted with actual malice. Id. The Scaccias filed a memorandum contra but made no Civ.R. 56(F) motion for additional time to conduct discovery.

{¶ 7} Subsequently, the Scaccias served additional interrogatories and a request for production of documents on Dayton Newspapers. Dayton Newspapers asked the court to enforce its prior stay of discovery or grant a protective order. The Scaccias asked the court to lift the stay and compel discovery. The trial court did not specifically rule on those motions.

{¶ 8} Dayton Newspapers renewed its prior motion for summary judgment concerning the public-figure status of the Scaccias. The Scaccias opposed the motion and also filed a Civ.R. 56(F) motion seeking additional time for discovery. In his affidavit in support of the motion, John Scaccia stated: "Plaintiffs have received no discovery in this case." The Scaccias did not identify what additional discovery they needed to oppose the motion for summary judgment that Dayton Newspapers filed.

{¶ 9} On October 18, 2005, the trial court granted Dayton Newspapers' motion for summary judgment. With regard to the Scaccias' Civ.R. 56(F) motion, the trial court found that "the instant case has been pending for some 6 years during which discovery has been exchanged and affidavits and exhibits have been filed for the Court's consideration in ruling on the various motions filed by the parties. Further, Plaintiffs have not indicated what type of discovery they intend to employ nor what information they need to obtain in order to respond to Defendants' Motion. Additionally, Plaintiffs do not indicate why they have not yet conducted the discovery they claim they need in order to respond. Accordingly, the Court FINDS that Plaintiffs' Motion for additional time to conduct discovery to respond to Defendants' Motion for Summary Judgment is not well-taken, and is hereby, OVERRULED."

{¶ 10} In its decision on Dayton Newspapers' summary judgment motion, the court also found that John Scaccia is a public figure and that Cynthia Scaccia is a limited-purpose public figure under the *New York Times v. Sullivan* rule and that therefore they may prevail on their defamation claim only on a showing of actual malice. The court further found on the record before it that there was no genuine issue of material fact and that reasonable minds could not find that Dayton Newspapers acted with actual malice in publishing the reports of the Scaccias' conduct with respect to their elderly neighbor and his financial affairs.

The court therefore granted summary judgment for Dayton Newspapers on the Scaccias' claims for relief.

{¶ 11} The Scaccias filed a timely notice of appeal. They present four assignments of error, which we will address in an order that facilitates our analysis.

FOURTH ASSIGNMENT OF ERROR

{¶ 12}"The trial court prejudicially erred in not permitting discovery and denying appellants' Civ. R. 56(F) motion."

{¶ 13} The trial court's determination of a Civ.R. 56(F) motion is a matter within its sound discretion. *Clark Cty. Solid Waste Mgt. Dist. v. Danis Clarkco Landfill Co.* (1996), 109 Ohio App.3d 19, 38, 671 N.E.2d 1034. Accordingly, the trial court's determination will not be reversed absent an abuse of that discretion. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140, quoting *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

{¶ 14} Civ.R. 56(F) provides: "Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."

{¶ 15} The party seeking additional time to respond to a motion for summary judgment must present sufficient reasons that would justify the requested continuance. *Wombold v. Barna* (Dec. 11, 1998), Montgomery App. No. 17035, 1998 WL 853081. The party seeking additional time must do more than merely assert generally the need for additional discovery. Id. There must be a factual basis stated and reasons given why the party cannot present facts essential to its opposition to the motion. Id.

{¶ 16} The parties filed discovery motions relating to the Scaccias' second set of interrogatories and request for production of documents served on Dayton Newspapers. Because the June 23, 2000 stay ordered by the trial court had dissolved as a consequence of our reversal of the disqualification order in the first appeal, the Scaccias had the right to discover documents and answers to interrogatories, and any objections to these demands by Dayton Newspapers based on the stay of discovery would not have been well taken.

{¶ 17} The Civ.R. 56(F) motion that the Scaccias filed did not identify what additional discovery they needed in order to respond to Dayton Newspapers' motion. John Scaccia merely averred that the Scaccias had received no discovery at all in this case. That assertion implicated the prior motion to compel discovery that the Scaccias filed, on which the trial court had failed to rule, as well as Dayton Newspapers' reliance on the court's prior stay order, the effect of which was nullified by our holding in the prior appeal.

{¶ 18} In *Clark Cty. Solid Waste Mgt. Dist. v. Danis Clarkco Landfill Co.*, 109 Ohio App.3d 19, 671 N.E.2d 1034, we held that a complaining party's failure to file either a motion to compel discovery pursuant to Civ.R. 37(A) or a Civ.R. 56(F) motion for additional time to make further discovery waived the party's contention on appeal that it was prejudiced by a lack of discovery. The Scaccias did move to compel discovery, but their request was unavailing. The trial court therefore abused its discretion when it granted Dayton Newspapers' motion for summary judgment on the record before it. In a similar circumstance, the Supreme Court stated:

{¶ 19} "[W]e believe that the courts below should have been more cautious in determining whether any genuine issues of material fact existed that could potentially impose liability on the appellee for the injuries sustained by appellant. One cannot weigh evidence most strongly in favor of one opposing a motion for summary judgment when there is a dearth of evidence available in the first place." *Tucker v. Webb Corp.* (1983), 4 Ohio St.3d 121, 123, 447 N.E.2d 100.

{¶ 20} The fourth assignment of error is sustained.

THIRD ASSIGNMENT OF ERROR

{¶ 21}"The trial court prejudicially erred in holding that John Scaccia was a public official for purpose of the articles at issue."

{¶ 22} The trial court expressly adopted and followed our holding in the prior appeal concerning this issue. We wrote:

{¶ 23} "Our resolution of the issue requires a brief detour into the constitutional underpinnings of a defamation claim. In *New York Times v. Sullivan* (1964), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, the Supreme Court brought defamation into the constitutional realm. There the court held that a higher standard, *actual malice*, applies to actions brought by public officials against critics of their official conduct. *Id.* Actual malice prohibits a public official from recovering any damages for a defamatory falsehood unless he proves that the communication was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.' *Id.* at 280, 84 S.Ct. at 726, 11 L.Ed.2d at 706.

{¶ 24} "The Court offered guidance on who exactly qualifies as a 'public official' in *Rosenblatt v. Baer* (1966), 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597. The public official plaintiff must have, or appear to have, substantial responsibility or control over public affairs, and his position must have such 'apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees * * *' *Id.* at 86, 86 S.Ct. at 676, 15 L.Ed.2d at 606. In practice, the public official category has been extended broadly. *See Arnheiter v. Random House, Inc.* (C.A.9, 1978), 578 F.2d 804 (naval officer); *Gray v. Udevitz* (C.A.10, 1981), 656 F.2d 588 (policeman); *Grzelak v. Calumet Pub. Co., Inc.* (C.A.7, 1975), 543 F.2d 579 (mid-level municipal employee). We find that John Scaccia's position at the time of the alleged defamation as the chief of the criminal section of the City of Dayton Law Department meets the public official test.

{¶ 25} "However, for our purposes the closer question may be whether the conduct giving rise to the articles at issue are purely private matters, outside of the scope of John Scaccia's duties as the head of the City's criminal division. In *Garrison v. Louisiana* (1964), 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125, remarks made by a district attorney asserting that certain judges were lazy, vacation-oriented, and sympathetic to criminals were found to be comments about the judge's official conduct. The Court emphasized that [t]he public-official rule protects the paramount public interest in a free flow of information to the people concerning public officials, their servants. To this end, anything which might touch on the official's fitness for office is relevant. Few personal attributes are more germane to fitness for office than dishonesty, malfeasance, or improper motivation, even though these characteristics may also affect the official's private character. *Id.* at 77, 85 S.Ct. at 217, 13 L.Ed.2d at 134.

{¶ 26} "Subsequently, the Court held that 'a charge of criminal conduct against an official or candidate, no matter how remote in time or place, is always 'relevant to his fitness for office' for purposes of applying the *New York Times* rule.' *Ocala Star–Banner Co. v. Damron* (1971), 401 U.S. 295, 300, 91 S.Ct. 628, 632, 28 L.Ed.2d 57, 62 (discussing *Monitor Patriot v. Roy* (1971), 401 U.S. 265, 91 S.Ct. 621, 28 L.Ed.2d 35).

{¶ 27} "We find that, although John Scaccia's position was not an elected one, the responsibilities of his position and the importance of the position in the eyes of the public make him a public official for purposes of the defamation claim. Therefore, he must meet the 'actual malice' quantum of proof prescribed in *New York Times, supra.*" *Scaccia v. Dayton Newspapers, Inc.,* at * 7–8.

{¶ 28} The Scaccias cite several decisions in support of their contention. *Mandel v. The Boston Phoenix, Inc.* (D.Mass.2004), 322 F.Supp.2d 39, concerned

an assistant state attorney general. *E. Canton Edn. Assn. v. McIntosh* (1999), 85 Ohio St.3d 465, 709 N.E.2d 468, involved a public school principal. Neither persuades us that our prior analysis was incorrect, and the Scaccias have failed to identify any way in which it was.

{¶ 29} The third assignment of error is overruled.

SECOND ASSIGNMENT OF ERROR

 {¶ 30}"The trial court committed prejudicial error when it failed to place the burden of establishing public figures status on the defendants, when it failed to apply the proper test for limited purpose public figure status and when it ultimately held that Cynthia Scaccia is a limited purpose public figure."

{¶ 31} As it did with respect to our holding concerning John Scaccia, the trial court relied on our holding in the prior appeal that Cynthia Scaccia is a limited-purpose public figure and therefore must prove actual malice pursuant to *New York Times v. Sullivan* in order to prevail on her defamation claim. However, we withdrew that holding on reconsideration. *Scaccia v. Dayton Newspapers, Inc.* (Nov. 30, 2001), Montgomery App. Nos. 18435 and 18729, 2001 WL 1517043.[1] The trial court was therefore not bound by our holding, but the court nevertheless adopted our rationale to hold that Cynthia Scaccia is a limited-purpose public figure. The trial court was entitled to do that. The issue is whether the court erred.

 {¶ 32} In the prior appeal, we cited the holding in *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 352, 94 S.Ct. 2997, 41 L.Ed.2d 789, that "[i]t is preferable to reduce the [limited] public-figure question to a more meaningful context by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation." Criminal activity may be one such element. *Marcone v. Penthouse Internatl. Magazine for Men* (C.A.3, 1984), 754 F.2d 1072. Also, an individual who "voluntarily injects himself or is drawn into a particular public controversy * * * thereby becomes a public figure for a limited range of issues." *Gertz*, 418 U.S. at 351, 94 S.Ct. 2997, 41 L.Ed.2d 789.

 {¶ 33} A public controversy is a dispute that in fact has received public attention because its outcome will affect the public or some segment of it in an appreciable way. *Waldbaum v. Fairchild Publications, Inc.* (C.A.D.C.1980), 627 F.2d 1287. Essentially private concerns or disagreements do not become public controversies solely because members of the public find them appealing to their morbid or prurient curiosity. Id.

---

1. The App.R. 26(A) application the Scaccias filed did not similarly complain about our pronouncement that John Scaccia is a public figure for purposes of his defamation claim.

480

{¶ 34} In finding that Cynthia Scaccia is a limited-purpose public figure with respect to her claim for relief for defamation arising from publication of the probate court's proceedings concerning her dealings with her elderly neighbor, we wrote:

{¶ 35} "Cynthia Scaccia intentionally ventured to engage in a controversial matter with a public official. Their course of action had a bearing on the public official's fitness for office. She injected herself into a public controversy, and thereby became a public figure for that limited purpose. Furthermore, the fact that Cynthia is married to the public official bolsters her public-figure status. Therefore, Cynthia Scaccia is a public figure for purposes of her defamation claim arising from the articles at issue. Accordingly, because the Scaccias must prove 'actual malice,' which requires evidence of knowing falsity or reckless disregard for the truth, *New York Times, supra,* * * * " *Scaccia v. Dayton Newspapers, Inc.,* * 9.

{¶ 36} Being married to a public official tends to put a spouse more in the public eye, but the spouse's private conduct is not a matter that has a material bearing on the public official's fitness for office, which is the paramount interest served by the higher actual-malice standard. *Garrison v. Louisiana,* 379 U.S. at 69, 85 S.Ct. 209, 13 L.Ed.2d 125. Cynthia Scaccia's dealings with her elderly neighbor were essentially private, and she was not charged with, much less convicted of, any criminal conduct. Contra *Talley v. WHIO TV-7,* (1998), 131 Ohio App.3d 164, 722 N.E.2d 103. Her dealings with her elderly neighbor resulted in controversy, but the fact that she was then married to a public official does not support a conclusion that she thereby voluntarily injected herself into a public controversy, notwithstanding the fact that her husband likewise benefited from her dealings. Being associated with a public official, even by marriage, and in an enterprise affecting the public officials' fitness for office does not elevate a private person to a limited-purpose public-official status vicariously for purpose of the actual-malice standard. Some conduct on Cynthia Scaccia's part by which she voluntarily injected herself into the public controversy is required.

{¶ 37} Our prior finding that Cynthia Scaccia must be classified as a limited-purpose public figure with respect to her defamation claim against Dayton Newspapers was incorrect. Therefore, while we cannot say that the trial court did anything other than follow the course our opinion laid out, our holding on reconsideration relieved the court of any duty to apply our prior finding. We necessarily find that the trial court erred when it granted Dayton Newspapers' motion for summary judgment, holding that Cynthia Scaccia is a limited-purpose public figure in these proceedings.

{¶ 38} The proper standard of proof to apply to Cynthia Scaccia's claim for relief alleging defamation is the negligence standard. *Lansdowne v. Beacon Journal Publishing Co.* (1987), 32 Ohio St.3d 176, 512 N.E.2d 979. The proponent of the claim must show that the published statement or statements are defamatory because they are objectively false and that the defendant acted unreasonably in attempting to discover the truth or falsity of the publication's defamatory character. *Davis v. Jacobs* (1998), 126 Ohio App.3d 580, 710 N.E.2d 1185. "As to the degree of fault, a private-figure plaintiff must prove by clear and convincing evidence that the defendant acted negligently." *Pollock v. Rashid,* 117 Ohio App.3d 361, 368, 690 N.E.2d 903.

{¶ 39} Newspapers are privileged to print fair, accurate, and impartial reports of judicial proceedings, unless the newspaper is shown to have acted maliciously. R.C. 2317.05. "In order to invoke this privilege, the report need not be a verbatim account of the official record. Instead, the report need only be a substantially accurate account. A 'substantially accurate report' is one that conveys the essence of the official record to the ordinary reader, without misleading the reader through the inclusion of inaccurate information that is not in the record or through the exclusion of relevant evidence that is in the record." (Footnotes omitted.) 35 Ohio Jurisprudence 3d (2002), Defamation and Privacy, Section 90.

{¶ 40} The second assignment of error is sustained.

FIRST ASSIGNMENT OF ERROR

{¶ 41} "Assuming that Cynthia Scaccia was a limited purpose public figure, and that John Scaccia was a public official, the trial court committed prejudicial error in finding that plaintiffs could not establish actual malice."

{¶ 42} By denying the Scaccias the opportunity for discovery of evidence to prove their defamation claims, the trial court erred when it entered summary judgment for Dayton Newspapers on the Scaccias' respective defamation claims. The first assignment of error is sustained.

Conclusion

{¶ 43} Having sustained the first, second, and fourth assignments of error, the judgment from which the appeal was taken will be reversed in part and remanded for further proceedings. That part of the court's judgment finding that John Scaccia is a public figure and therefore must prove actual malice in order to prove his defamation claim will be affirmed.

Judgment affirmed in part
and reversed in part,
and cause remanded.

WOLFF, P.J., and BROGAN, J., concur.