[Cite as *Christian v. Kettering Med. Ctr.*, 2016-Ohio-1260.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| ROSALYN CHRISTIAN | : | |
| | : | |
| Plaintiff-Appellant | : | C.A. CASE NO. 26717 |
| | : | |
| v. | : | T.C. NO. 14CV5808 |
| | : | |
| KETTERING MEDICAL CENTER, et al. | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___25th___ day of _____March_____, 2016.

. . . . . . . . . . .

MATTHEW T. JEWSON, Atty. Reg. No. 0063928, 812 E. National Rd., Vandalia, Ohio 45377
         Attorney for Plaintiff-Appellant

CHARLES F. SHANE, Atty. Reg. No. 0062494 and CHRISTINA M. FLANAGAN, Atty. Reg. No. 0087943, 400 PNC Center, 6 N. Main Street, Dayton, Ohio 45402
         Attorneys for Defendant-Appellee

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Rosalyn Christian appeals from a judgment of the Montgomery County Court of Common Pleas, which denied Christian's Civ.R. 56(F) motion and granted summary judgment to Kettering Medical Center on statute of limitations grounds. For the following

reasons, the trial court's judgment will be reversed and the case will be remanded for further proceedings.

## I. Background and Procedural History

{¶ 2} The evidence submitted in support of Kettering Medical Center's motion for summary judgment reveals the following facts.

{¶ 3} At approximately 4:30 p.m. on December 30, 2012, Christian went to the emergency department at Kettering Medical Center for symptoms of hemorrhaging,[1] an unforeseen medical emergency. She was driven to the hospital by Holly Hall, a friend, in Hall's personal vehicle. Upon arriving at the hospital, Hall entered the emergency department and requested help with getting Christian out of the vehicle. John Glenn, a registered nurse who was working in that capacity in the emergency room when Christian arrived, took a wheelchair to Hall's vehicle and attempted to transfer Christian from the vehicle to the wheelchair. The attempt was unsuccessful, for reasons that are in dispute, and Christian ended up on the ground. Glenn called for assistance, and Christian was lifted onto a gurney and transported into the emergency department.

{¶ 4} More than a year later, on October 9, 2014, Christian filed a complaint against Kettering Medical Center and other unnamed parties, alleging that she had cautioned the employee who came out to help her (whose name was then unknown) in response to Hall's request that he "may want additional help from someone" while assisting her out of the vehicle and into a wheelchair. The employee allegedly rejected Christian's advice, stating that he was experienced. Christian alleged that, when the employee lifted her

---

[1] The complaint indicated that Christian had a serious gastrointestinal bleed, but her affidavit merely stated that she had "symptoms of hemorrhaging." The affidavit did not specify what her symptoms were.

out of the vehicle, she "was dropped, fell to the ground and suffered serious bodily injury," including injuries to her Achilles tendon and foot. Christian's complaint asserted two claims: (1) negligence and (2) negligent supervision and training.

{¶ 5} Kettering Medical Center moved to dismiss the action, pursuant to Civ.R. 12(B)(6), claiming that Christian's allegations amounted to a "medical claim" and that her action was filed beyond the one-year statute of limitations. Christian opposed the motion, and attached her own affidavit and an affidavit from Hall. The trial court denied the motion (without referencing the affidavits), concluding that Christian's claims, as pled, were not "medical claims." The court explained:

> Even if the wheelchair was used to transfer Plaintiff from her vehicle into the hospital where she could receive treatment for her medical condition, there is no indication at this point that the use of the wheelchair was an inherent part of a medical procedure or that it arose out of physician ordered treatment, especially since Plaintiff had only just arrived at KMC when the wheelchair transfer attempt was made and Plaintiff was injured. It is also unclear whether a "certain amount" of professional expertise or professional skill may have been required to transfer Plaintiff from the vehicle to the wheelchair.

{¶ 6} In January 2015, the trial court issued a scheduling order with discovery deadlines. Under that order, the deadline for filing motions for summary judgment was August 4, 2015; discovery was required to be completed by October 5, 2015; and trial was scheduled for November 2, 2015.

{¶ 7} On May 1, 2015, Kettering Medical Center filed a motion for summary

judgment on the ground that there was no genuine issue of material fact and that Christian's claims were barred by the statute of limitations, as a matter of law. The hospital supported its motion with Glenn's affidavit and the same affidavits of Christian and Hall that had previously been submitted by Christian. The trial court set a submission date of May 25, 2015, for the summary judgment motion.

{¶ 8} On May 12, 2015, Christian filed a motion for a continuance, pursuant to Civ.R. 56(F). Christian argued:

Discovery within this litigation is still in its early stages. Written discovery has been exchanged, but no depositions have been taken. As such, undersigned counsel has not had sufficient time to depose all necessary, material witnesses. Plaintiff needs additional time to complete this discovery prior to responding to Defendant's Motion for summary judgment. Several depositions will be necessary for Plaintiff's counsel to ascertain all of the facts and circumstances regarding the incident which gave rise to this lawsuit. While Plaintiff's deposition has been scheduled, counsel for Plaintiff and Defendant will be working to schedule additional depositions within the next 30-45 days. * * * Undersigned counsel has been diligent in their pursuit of affidavits and discovery in this matter since being recently retained. By granting Plaintiff's request for a continuance to complete further, necessary discovery the Court will in no way prejudice the Defendants in this case.

Christian's counsel submitted a supporting affidavit with similar statements.

{¶ 9} Kettering Medical Center opposed the Civ.R. 56(F) motion. The hospital

asserted that a delay until August 4 (the discovery deadline) was an unreasonable delay. It emphasized that Christian had not set forth any reasons why she could not present facts to oppose summary judgment on the statute of limitations issue, noting that Christian had already filed her own affidavit and an affidavit of a witness (Hall) in response to the prior motion to dismiss on the same issue. Kettering Medical Center further stated that Christian had not requested a time to depose Glenn.

{¶ 10} In reply, Christian stated that Kettering Medical Center had failed to provide her with written discovery responses, and she did not know Glenn's name until May 1, when the hospital filed its summary judgment motion. Christian asserted that she "must be given the opportunity to depose Mr. Glenn prior to filing any response."

{¶ 11} The trial court overruled Christian's Civ.R. 56(F) motion. The court reasoned that the summary judgment motion related to "one very discrete issue," i.e., whether the statute of limitations had expired prior to the filing of the complaint, and Christian had not suggested what discovery was necessary in order for her to respond to the summary judgment motion.

{¶ 12} A week later, Christian responded to the summary judgment motion, arguing that her claims were not "medical claims," as a matter of law. Christian did not submit any additional evidence.

{¶ 13} The trial court granted Kettering Medical Center's summary judgment motion on May 28, 2015. The trial court reviewed the definition for a "medical claim" under R.C. 2305.113(E)(3) and discussed *Conkin v. CHS-Ohio Valley, Inc.*, 1st Dist. Hamilton No. C-110660, 2012-Ohio-2816, which discussed what constituted "care" under Ohio Supreme Court authority, particularly when the "care" involved the use of medical

equipment.   *Conkin* held that an employee did not provide "medical care" when transferring the plaintiff's ward from her wheelchair into a Hoyer lift so that the ward could shower.   The trial court also cited other cases which held, on the other hand, that negligence in the transporting of a patient for medical diagnosis or treatment constituted a medical claim.   Applying those cases to the facts before it, the trial court concluded that the evidence before it demonstrated that Christian had asserted a "medical claim."   It reasoned:

> In consideration of the evidence before the court, the court finds that Plaintiff's injury arose because she was being transported from the parking lot into the hospital in the process of receiving medical diagnosis, care, or treatment for her gastrointestinal bleeding, thereby creating a medical claim subject to the one-year statute of limitations under R.C. 2305.113.   The court finds that the initial staff assistance of transferring Plaintiff out of a vehicle in the parking lot into the wheelchair involved "the prevention or alleviation of a physical or mental defect or illness," as it is undisputed that Plaintiff was there to receive treatment for a medical condition.   The court also finds that the use of the wheelchair was necessary to transporting Plaintiff into KMC from the vehicle, as it is undisputed that Plaintiff was unable to independently walk into or otherwise enter the hospital.   While Plaintiff argued that the use of the wheelchair and the transfer of Plaintiff from the vehicle to the wheelchair did not require a certain level of professional skill or expertise, Plaintiff failed to present any evidence supporting her argument.   Conversely, Glenn asserted in his affidavit that

a certain amount of professional expertise or skill was required to transfer Plaintiff out of the vehicle and into the wheelchair. The court finds that, based on the evidence, Plaintiff's claim constitutes a "medical claim" subject to the one-year statute of limitations under R.C. 2305.113. Accordingly, because Plaintiff failed to file her claim until after the expiration of the one-year statute of limitations, Plaintiff's claim is time-barred.

{¶ 14} Christian appeals from the trial court's judgment, raising two assignments of error.

## II. Civ.R. 56(F) Motion

{¶ 15} Christian's first assignment of error states:

**The trial court erred to the prejudice of Plaintiff-Appellant by denying her Motion for Civil Rule 56(F) Continuance.**

{¶ 16} Civ.R. 56(F) provides:

Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.

{¶ 17} We discussed this Rule in *Doriott v. MVHE, Inc.*, 2d Dist. Montgomery No. 20040, 2004-Ohio-867, stating:

Pursuant to Civ.R. 7(A), the grounds for a Civ.R. 56(F) motion for a continuance must be stated with particularity. In addition, Civ.R. 56(F)

requires the motion to be supported by an affidavit containing "sufficient reasons why (the nonmoving party) cannot present by affidavit facts sufficient to justify its opposition" to the summary judgment motion. *Id.* "Mere allegations requesting a continuance or deferral of action for the purpose of discovery are not sufficient reasons why a party cannot present affidavits in opposition to the motion for summary judgment." "There must be a factual basis stated and reasons given within an affidavit why a party cannot present facts essential to its opposition to the motion."

A party who seeks a continuance for further discovery is not required to specify what facts he hopes to discover, especially where the facts are in the control of the party moving for summary judgment. However, the court must be convinced that there is a likelihood of discovering some such facts. Further, a claim that the party has not completed discovery is more likely to be rejected by the court where the party has not shown some diligence in attempting discovery.

(Citations omitted.) *Doriott* at ¶ 40-41; *Gregory v. Towne Properties, Inc.*, 2d Dist. Montgomery No. 26410, 2015-Ohio-443, ¶ 15 (quoting *Doriott*).

**{¶ 18}** "The trial court's determination of a Civ.R. 56(F) motion is a matter within its sound discretion. * * * Accordingly, the trial court's determination will not be reversed absent an abuse of that discretion." (Citation omitted.) *Scaccia v. Dayton Newspapers, Inc.*, 170 Ohio App.3d 471, 2007-Ohio-869, 867 N.E.2d 874, ¶ 13 (2d Dist.) An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State*

*v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 19} Although we may not have reached the same conclusion, with the record before it, the trial court did not abuse its discretion when it denied Christian's Civ.R. 56(F) motion for a continuance. Christian's motion and supporting affidavit simply stated that discovery had not been completed, that counsel requires additional time to depose "numerous material witnesses," that he cannot oppose the summary judgment motion without additional time, and that counsel has pursued discovery diligently. The counsel indicated that the deadlines for completing discovery and filing motions for summary judgment had been set by the court, as agreed to by the parties.

{¶ 20} Nothing in Christian's motion and supporting affidavit addressed why additional time was required to address the limited issue raised in the summary judgment motion, namely whether the complaint was filed within the statutory time limitation. Christian's Civ.R. 56(F) motion and affidavit did not identify any factual matter related to the statute of limitations issue that needed to be explored. There was no suggestion that she had not yet received any discovery responses from Kettering Medical Center; to the contrary, the motion simply stated that "written discovery has been exchanged," which suggested that discovery responses had been provided. Christian did not inform the court that Kettering Medical Center had not yet informed her of the identity and qualifications of the employee who had assisted her in the parking lot.

{¶ 21} Christian's reply memorandum, which was not supported by an affidavit, raised that Kettering Medical Center had not yet provided discovery responses and that Christian had learned of the employee's name when the summary judgment motion was filed. She stated, "Plaintiff must be given the opportunity to depose Mr. Glenn prior to

filing any response." However, Christian again did not articulate any factual basis why she could not present facts essential to its opposition to the motion. And there is no reason why Christian could not have presented an affidavit from her own expert witness as to whether the transferring of an individual to a wheelchair under the known circumstances constituted "medical care" or required medical expertise.

{¶ 22} The trial court did not abuse its discretion in denying Christian's Civ.R. 56(F) motion for a continuance. Christian's first assignment of error is overruled.

### III. Statute of Limitations

{¶ 23} Christian's second assignment of error states:

**The trial court committed prejudicial error when it determined that Plaintiff-Appellant's claims were "medical claims" thereby sustaining Defendant-Appellee Kettering Medical Center's Motion for Summary Judgment.**

{¶ 24} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996).

{¶ 25} Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dresher* at 293; Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Id.* Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

{¶ 26} We review the trial court's ruling on a motion for summary judgment de novo. *Schroeder v. Henness*, 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 42. De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence, without deference to the trial court, to determine whether, as a matter of law, no genuine issues exist for trial. *Ward v. Bond*, 2d Dist. Champaign No. 2015-CA-2, 2015-Ohio-4297, ¶ 8.

{¶ 27} The parties agree that the statute of limitations for a personal injury claim based on ordinary negligence is two years. R.C. 2305.10. In contrast, a negligence action based on a medical claim must be brought within one year. R.C. 2305.113.

{¶ 28} The term "medical claim" is defined as:

any claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice registered nurse, * * * *and that arises out of the medical diagnosis, care, or treatment of any person.*

(Emphasis added.) R.C. 2305.113(E)(3).

{¶ 29} The terms "medical diagnosis" and "treatment" are terms of art, which relate to the identification and alleviation of a physical or mental illness, disease, or defect. *Browning v. Burt*, 66 Ohio St.3d 544, 557, 613 N.E.2d 993 (1993) (discussing a prior analogous version of R.C. 2305.11). In the context of the statute of limitations for "medical claims," "care" has been defined as "the prevention or alleviation of a physical or mental defect or illness." *Id.* The Supreme Court of Ohio has cautioned that the term "care" "should not be broadly interpreted when the context in which it is used is properly understood." *Id.*

{¶ 30} "Medical claims" include, among other things, derivative claims for relief that arise from the plan of care, medical diagnosis, or treatment of a person; and claims that arise out of the plan of care, medical diagnosis, or treatment of any person and to which either of the following applies:

(i) The claim results from acts or omissions in providing medical care.

(ii) The claim results from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment.

R.C. 2305.113(E)(3)(a) and (b).

{¶ 31} On appeal, Christian claims that her allegations were not "medical claims," because the transfer from her car to the wheelchair was not an inherent part of a medical procedure or physician-ordered treatment. She emphasizes that she had not yet been seen or evaluated by any physician or medical staff, and Glenn did not know the reason that she was at the hospital for treatment. Christian states that her lawsuit is similar to *Conkin*, 1st Dist. Hamilton No. C-110660, 2012-Ohio-2816, which the trial court discussed, and is distinguishable from *Rome v. Flower Mem. Hosp.*, 70 Ohio St.3d 14,

635 N.E.2d 1239 (1994), which *Conkin* discusses.

{¶ 32} In *Rome*, the Ohio Supreme Court addressed two cases in which patients were injured at hospitals. In one case, a student radiological intern failed to fasten a footboard to the bottom of a radiology table, causing a patient to fall from the table when it was tilted. In the second, a patient was injured when a component of his wheelchair collapsed as he was being transported from physician-ordered physical therapy following knee surgery. The Ohio Supreme Court held that a "medical claim" includes a hospital employee's negligent use of hospital equipment while caring for a patient which allegedly results in an injury to the patient. *Rome* at syllabus.

{¶ 33} As to the case involving the wheelchair, the supreme court noted that the physical therapy was ordered by the patient's physician, that it was standard practice to transport patients to and from physical therapy in a wheelchair, and that the patient was assisted by a hospital employee who was required to use a certain amount of professional skill in transporting the patient in a wheelchair. The supreme court concluded that "the transport of [the patient] from physical therapy was ancillary to and an inherently necessary part of his physical therapy treatment" and resulted from his "care or treatment" at the hospital. *Rome* at 16-17.

{¶ 34} In *Conkin*, the First District held that a nursing home employee did not provide "medical care" when transferring the plaintiff's ward, a resident, from her wheelchair into a Hoyer lift so that the ward could shower. The court reasoned that, even if the Hoyer lift had been used for the alleviation of problems associated with the resident's range of motion, there was "no indication at this point in the proceedings that the use of the Hoyer lift was an inherent part of a medical procedure or that it arose out of physician

ordered treatment." *Id.* at ¶ 11. The appellate court further noted that it was "unclear whether a 'certain amount' of professional expertise or professional skill may have been required to transfer [the resident] into the lift." *Id.*

**{¶ 35}** As *Conkin* noted, its holding is consistent with cases from other appellate districts. For example, courts have held that the plaintiff did not assert a "medical claim" when the injury allegedly arose from (1) falling out of a wheelchair while on the way to lunch at an assisted living facility, *Eichenberger v. Woodlands Assisted Living Residence, L.L.C.*, 2014-Ohio-5354, 25 N.E.3d 355 (10th Dist.); (2) falling while attempting to stand from a wheelchair outside the hospital upon discharge, *Hill v. Wadsworth-Rittman Area Hosp.*, 185 Ohio App.3d 788, 2009-Ohio-5421, 925 N.E.2d 1012 (9th Dist.); (3) falling while going from a hospital bed to the bathroom*, Balascoe v. St. Elizabeth Hosp. Med. Ctr.*, 110 Ohio App.3d 83, 673 N.E.2d 651 (7th Dist.1996); and (4) falling backwards while washing hands in a bathroom while receiving rehabilitative care following surgery, *McDill v. Sunbridge Care Ents., Inc.*, 4th Dist. Pickaway No. 12CA8, 2013-Ohio-1618. In each of these cases, the injury did not arise out of medical diagnosis, care, or treatment.

**{¶ 36}** Kettering Medical Center cites to other cases to support its position that Christian had asserted a "medical claim." In particular, the hospital relies on *Godby v. Med Central Health Sys.*, 5th Dist. Richland No. 04CA89, 2005-Ohio-2671, in which the plaintiff alleged that she was injured after being improperly placed on a stretcher by a security guard at the medical center. (The opinion provided no additional details.) The Fifth District held that "the placement of appellant on the stretcher was 'ancillary to and an inherently necessary part of' her diagnosis and treatment" and concluded that her claim constituted a "medical claim."

{¶ 37} *Godby* relied on *Long v. Warren Gen. Hosp.*, 121 Ohio App.3d 489, 700 N.E.2d 364 (11th Dist.1997), which Kettering Medical Center also cites. In *Long*, a patient went to the hospital at the direction of his physician for a colonoscopy; the patient was directed to an examination room, where he changed into a hospital gown. The patient fell while attempting to walk (at the direction of an orderly) from the bed in the examination room to a gurney, which would transport him to the colonoscopy test. The Eleventh District held that transporting a patient to a colonoscopy test was "ancillary to and an inherently necessary part of his diagnosis and treatment" and thus the plaintiff had alleged a "medical claim." It noted that the patient was at the hospital due to his physician's instructions, he fell while attempting to comply with the orderly's instructions to get on the gurney, and the "need to transport appellant arose out of the diagnostic testing directed by appellant's physician." *Long* at 492.

{¶ 38} In the case before us, the evidence reflects that Christian came to Kettering Medical Center in Hall's private vehicle upon experiencing a self-described medical emergency. Christian stated that she "was not expected at Kettering Medical Center and did not present there for any scheduled treatment." (Christian Aff. ¶ 4.) Christian did not come to the hospital for any physician-ordered evaluation and/or treatment.

{¶ 39} Hall went inside the hospital and asked for assistance in getting Christian out of the vehicle. (Hall Aff. ¶ 4.; *see* Glenn Aff. ¶ 5) Glenn came outside with a wheelchair and attempted to transfer Christian to it. (Christian Aff.¶ 6; Hall Aff. ¶ 5; Glenn Aff. ¶ 7, ¶ 9.) Christian states that she did not receive any medical care at the time of her injury outside the hospital, that neither she nor Hall advised anyone of the nature of her emergency or symptoms, and that the man who assisted her (Glenn) did not ask any

questions about her medical condition or care. (Christian Aff. ¶ 7.) Hall likewise stated that Glenn "did not interact with Ms. Christian in any way except to attempt to transfer her from the vehicle to the wheelchair." (Hall Aff. ¶ 6.) Hall further stated that Glenn did not ask about Christian's condition, symptoms, or reason for coming to the hospital, nor was he informed of those facts. (*Id.*) Glenn's affidavit does not state that he evaluated Christian, obtained her medical history, or took any other actions (other than helping Christian from the vehicle and arranging for her to be taken into the hospital) to begin her treatment, diagnosis, and/or care related to her medical emergency.

{¶ 40} Glenn states in his affidavit that he exercised professional experience and skill while conveying Christian from the vehicle to the wheelchair, and that Christian could not have received medical treatment without being transported into the hospital. (Glenn Aff. ¶ 8, ¶ 9.) He states the conclusion that transferring Christian from the car to the wheelchair was thus "an inherently necessary part of the desired medical treatment."

{¶ 41} In granting summary judgment to Kettering Medical Center, the trial court apparently found significant Glenn's statements that he been trained in lifting and assisting ill and injured people from a seated position to a wheelchair and that he exercised professional experience and skill while assisting Christian. The only difference between the facts from which the trial court denied the Civ.R. 12(B)(6) motion and granted the summary judgment motion were those from Glenn's affidavit that his actions required a certain amount of professional expertise or skill. However, the need for skill in performing an act begs the question of whether that act itself was an inherent part of medical diagnosis, care, or treatment. In this case, we disagree with the trial court's apparent conclusion in the summary judgment decision, as opposed to the Civ.R.

12(B)(6) decision, that it was.

{¶ 42} Glenn's act of transferring Christian from her friend's vehicle to a wheelchair was too attenuated from the receipt of medical treatment, care, and diagnosis to constitute a "medical claim." It appears that Christian needed assistance to enter the hospital, where she could then be evaluated, diagnosed, and treated for her medical condition. But as noted by Justice Pfeifer in his dissent in *Rome*, "[a] claim sounding in negligence does not become a medical claim simply because the injury arises in a hospital." *Rome* at 17 (Pfeifer, J., dissenting); *see Browning*, 66 Ohio St.3d at 557, 613 N.E.2d 993 (1993) (not all claims asserted against a hospital are "medical claims").

{¶ 43} Here, there was nothing in Glenn's actions that constituted medical treatment or diagnosis, and the need to transport Christian from a private vehicle to a wheelchair did not arise out of any diagnostic testing, treatment, or care directed by a physician. Glenn's transferring Christian from a private vehicle to a wheelchair was simply for the purpose of allowing Christian to enter the hospital, where she could then seek medical attention. Glenn attempted to transfer Christian from Hall's vehicle to the wheelchair at Hall's request, and nothing in the record suggests that transporting a prospective patient from a private vehicle to a wheelchair upon arrival at the emergency department is Kettering Medical Center's standard practice.

{¶ 44} Construing the evidence in the light most favorable to Christian, her allegations do not constitute a "medical claim" within the meaning of R.C. 2305.113(E)(3). Accordingly, the trial court erred in granting summary judgment to Kettering Medical Center on statute of limitations grounds. Christian's second assignment of error is sustained.

## IV. Conclusion

{¶ 45} The trial court's judgment will be reversed and the case remanded for further proceedings.

. . . . . . . . . . . .

FAIN, J., concurring in the judgment:

{¶ 46} In sustaining the hospital's motion for summary judgment, the trial court noted that "Glenn asserted in his affidavit that a certain amount of professional experience or skill was required to transfer Plaintiff out of the vehicle and into the wheelchair." *Supra*, ¶ 13. In view of the significance the trial court ascribed to this averment in Glenn's affidavit, I conclude that Christian should have been afforded a meaningful opportunity to cross-examine Glenn on this point. Therefore, I am not so sure that Christian's First Assignment of Error should be overruled on its merits; perhaps the trial court did abuse its discretion in overruling Christian's Civ.R. 56(F) motion.

{¶ 47} But I find it unnecessary to decide this issue. Since I concur in sustaining Christian's Second Assignment of Error, for the reasons set forth in Part III of Judge Froelich's opinion, I regard the issue raised in Christian's First Assignment of Error as moot.

{¶ 48} I concur in the judgment.

. . . . . . . . . . . .

DONOVAN, P.J., dissenting:

{¶ 49} I dissent. It is undisputed that Christian was seeking medical

treatment/care at Kettering Medical Center at the time the injury occurred. It is likewise undisputed that the individual who assisted Christian is a registered nurse and employee of Kettering Medical Center. Clearly, this nurse was acting in the scope of his employment in providing assistance to Christian so that she could be cared for, that is the act was inherently necessary to alleviate and identify illness.

{¶ 50} In some ways, it is analogous to the individual who arrives by ambulance and is met/transported by medical personnel so that care/treatment/diagnosis can be made. The fact that no doctors' orders have been made yet would generally be the case when a patient arrives at the emergency room for emergency care and cannot enter on his or her own accord. However, this fact does not relieve the hospital and an R.N. from their professional duty to exercise care in the service of individuals arriving at the emergency room.

{¶ 51} In the *Rome* case, the Ohio Supreme Court utilized the terminology "ancillary to and an inherently necessary part of the administration of the x-ray procedure" in finding the plaintiff was making a medical claim. *Id.*, 70 Ohio St.3d at 16. Granted, in *Rome* it was an ordered test, but as I've previously articulated, emergency room initial assistance and care is to alleviate and identify illness and would generally precede orders.

{¶ 52} Furthermore, as emphasized in *Rome*, a hospital employee is "required to use a certain amount of professional skill in transporting the patient in the wheelchair." *Id.* at 16-17. It cannot be disputed that a wheelchair is a common piece of equipment utilized at a hospital by its employees in facilitating/providing medical care/treatment. Furthermore, the affidavit of the registered nurse clarifies that part of his training was "lifting and assisting ill and injured persons from a seated position to a wheelchair."

(Affidavit, par. 2).

**{¶ 53}** Although the majority cites to the *Conkin* case, it is distinguishable in that going to the bathroom is an ordinary, routine function, unlike seeking emergency room care with the necessity of wheelchair transport. In *Conkin*, the injury arose because the plaintiff had to use the bathroom, not because she was in the process of receiving care, treatment or medical diagnosis. *Id.* at ¶ 11.

**{¶ 54}** Accordingly, I would affirm.

. . . . . . . . . .

Copies mailed to:

Matthew T. Jewson
Charles F. Shane
Christina M. Flanagan
Hon. Mary Katherine Huffman