[Cite as *Christian v. Kettering Med. Ctr.*, 2017-Ohio-7928.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| ROSALYN CHRISTIAN | : | |
| | : | |
| Plaintiff-Appellant | : | C.A. CASE NO. 27458 |
| | : | |
| v. | : | T.C. NO. 14-CV-5808 |
| | : | |
| KETTERING MEDICAL CENTER, et al. | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___29th___ day of _____September_____, 2017.

. . . . . . . . . . .

MICHAEL WRIGHT, Atty. Reg. No. 0067698 and ROBERT L. GRESHAM, Atty. Reg. No. 0082151, 130 W. Second Street, Suite 1600, Dayton, Ohio 45402

and

NATHAN J. STUCKEY, Atty. Reg. No. 0086789, 735 N. Limestone Street, Springfield, Ohio 45502
        Attorneys for Plaintiff-Appellant

CHARLES F. SHANE, Atty. Reg. No. 0062494 and MICHAEL A. RIEMAN, Atty. Reg. No. 0088297, 400 PNC Center, 6 N. Main Street, Dayton, Ohio 45402
        Attorneys for Defendant-Appellee

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Rosalyn Christian appeals from a judgment of the Montgomery County Court

of Common Pleas, which granted Kettering Medical Center's renewed motion for summary judgment on statute of limitations grounds. For the following reasons, the trial court's judgment will be reversed, and the case will be remanded for further proceedings.

## I. Background and Procedural History

{¶ 2} In *Christian v. Kettering Med. Ctr.*, 2016-Ohio-1260, 62 N.E.3d 658 (2d Dist.) ("*Christian I*"), we set forth the procedural history leading to Kettering Medical Center's first motion for summary judgment, and we repeat it here.

{¶ 3} At approximately 4:30 p.m. on December 30, 2012, Christian went to the emergency department at Kettering Medical Center for symptoms of hemorrhaging, an unforeseen medical emergency. She was driven to the hospital by Holly Hall, a friend, in Hall's personal vehicle. Upon arriving at the hospital, Hall entered the emergency department and requested help with getting Christian out of the vehicle. John Glenn, a registered nurse who was working in that capacity in the emergency room when Christian arrived, took a wheelchair to Hall's vehicle and attempted to transfer Christian from the vehicle to the wheelchair. The attempt was unsuccessful, for reasons that are in dispute, and Christian ended up on the ground. Glenn called for assistance, and Christian was lifted onto a gurney and transported into the emergency department.

{¶ 4} More than a year later, on October 9, 2014, Christian filed a complaint against Kettering Medical Center and other unnamed parties, alleging that she had cautioned the employee who came out to help her (whose name was then unknown) in response to Hall's request that he "may want additional help from someone" while assisting her out of the vehicle and into a wheelchair. The employee allegedly rejected Christian's advice, stating that he was experienced. Christian alleged that, when the employee lifted her

out of the vehicle, she "was dropped, fell to the ground and suffered serious bodily injury," including injuries to her Achilles tendon and foot. Christian's complaint asserted two claims: (1) negligence and (2) negligent supervision and training.

{¶ 5} Kettering Medical Center moved to dismiss the action, pursuant to Civ.R. 12(B)(6), claiming that Christian's allegations amounted to a "medical claim" and that her action was filed beyond the one-year statute of limitations. Christian opposed the motion, and attached her own affidavit and an affidavit from Hall. The trial court denied the motion (without referencing the affidavits), concluding that Christian's claims, as pled, were not "medical claims."

{¶ 6} In January 2015, the trial court issued a scheduling order with discovery deadlines. Under that order, the deadline for filing motions for summary judgment was August 4, 2015; discovery was required to be completed by October 5, 2015; and trial was scheduled for November 2, 2015.

{¶ 7} On May 1, 2015, Kettering Medical Center filed a motion for summary judgment on the ground that there was no genuine issue of material fact and that Christian's claims were barred by the statute of limitations, as a matter of law. The hospital supported its motion with Glenn's affidavit and the same affidavits of Christian and Hall that had previously been submitted by Christian. The trial court set a submission date of May 25, 2015, for the summary judgment motion.

{¶ 8} Christian filed a motion for a continuance, pursuant to Civ.R. 56(F), which the hospital opposed. The trial court overruled Christian's Civ.R. 56(F) motion, reasoning that the summary judgment motion related to "one very discrete issue," i.e., whether the statute of limitations had expired prior to the filing of the complaint, and Christian had not

suggested what discovery was necessary in order for her to respond to the summary judgment motion. A week later, Christian responded to the summary judgment motion, arguing that her claims were not "medical claims," as a matter of law. Christian did not submit any additional evidence.

{¶ 9} On May 28, 2015, the trial court granted Kettering Medical Center's summary judgment motion, concluding that Christian had presented a "medical claim." The trial court reasoned:

In consideration of the evidence before the court, the court finds that Plaintiff's injury arose because she was being transported from the parking lot into the hospital in the process of receiving medical diagnosis, care, or treatment for her gastrointestinal bleeding, thereby creating a medical claim subject to the one-year statute of limitations under R.C. 2305.113. The court finds that the initial staff assistance of transferring Plaintiff out of a vehicle in the parking lot into the wheelchair involved "the prevention or alleviation of a physical or mental defect or illness," as it is undisputed that Plaintiff was there to receive treatment for a medical condition. The court also finds that the use of the wheelchair was necessary to transporting Plaintiff into KMC from the vehicle, as it is undisputed that Plaintiff was unable to independently walk into or otherwise enter the hospital. While Plaintiff argued that the use of the wheelchair and the transfer of Plaintiff from the vehicle to the wheelchair did not require a certain level of professional skill or expertise, Plaintiff failed to present any evidence supporting her argument. Conversely, Glenn asserted in his affidavit that

a certain amount of professional expertise or skill was required to transfer Plaintiff out of the vehicle and into the wheelchair. The court finds that, based on the evidence, Plaintiff's claim constitutes a "medical claim" subject to the one-year statute of limitations under R.C. 2305.113. Accordingly, because Plaintiff failed to file her claim until after the expiration of the one-year statute of limitations, Plaintiff's claim is time-barred.

{¶ 10} Christian appealed the trial court's denial of her Civ.R. 56(F) motion for a continuance and its summary judgment ruling. *See Christian I,* 2016-Ohio-1260, 62 N.E.3d 658. We concluded that the trial court did not abuse its discretion in denying Christian's Civ.R. 56(F) motion, but reversed the trial court's grant of summary judgment to Kettering Medical Center. *Id.* We concluded:

> In granting summary judgment to Kettering Medical Center, the trial court apparently found significant Glenn's statements that he been trained in lifting and assisting ill and injured people from a seated position to a wheelchair and that he exercised professional experience and skill while assisting Christian. The only difference between the facts from which the trial court denied the Civ.R. 12(B)(6) motion and granted the summary judgment motion were those from Glenn's affidavit that his actions required a certain amount of professional expertise or skill. However, the need for skill in performing an act begs the question of whether that act itself was an inherent part of medical diagnosis, care, or treatment. In this case, we disagree with the trial court's apparent conclusion in the summary judgment decision, as opposed to the Civ.R. 12(B)(6) decision, that it was.

Glenn's act of transferring Christian from her friend's vehicle to a wheelchair was too attenuated from the receipt of medical treatment, care, and diagnosis to constitute a "medical claim." It appears that Christian needed assistance to enter the hospital, where she could then be evaluated, diagnosed, and treated for her medical condition. But as noted by Justice Pfeifer in his dissent in *Rome*, "[a] claim sounding in negligence does not become a medical claim simply because the injury arises in a hospital." * * *

Here, there was nothing in Glenn's actions that constituted medical treatment or diagnosis, and the need to transport Christian from a private vehicle to a wheelchair did not arise out of any diagnostic testing, treatment, or care directed by a physician. Glenn's transferring Christian from a private vehicle to a wheelchair was simply for the purpose of allowing Christian to enter the hospital, where she could then seek medical attention. Glenn attempted to transfer Christian from Hall's vehicle to the wheelchair at Hall's request, and nothing in the record suggests that transporting a prospective patient from a private vehicle to a wheelchair upon arrival at the emergency department is Kettering Medical Center's standard practice.

*Christian I* at ¶ 41-43. We remanded to the trial court for further proceedings.

{¶ 11} Upon remand, the parties engaged in additional discovery.

{¶ 12} On January 3, 2017, Kettering Medical Center filed a second motion for summary judgment, again asserting that Christian's claims were barred by the statute of limitations. Kettering Medical Center claimed that paragraph 43 of *Christian I* "left open

a narrow issue to be decided," namely whether the hospital had a standard practice regarding the transport of prospective patients from private vehicles upon arrival at the emergency department. The hospital's summary judgment motion included the same three affidavits that it had provided in support of its first summary judgment motion, and it included an additional affidavit from John Weimer, RN, the hospital's Director of Emergency, Trauma and Support Services. Weimer's affidavit addressed the Emergency Department's legal obligations and policy regarding patients who arrive at the hospital for emergency treatment.

{¶ 13} Christian opposed the summary judgment motion, arguing that she was "neither undergoing a medical procedure nor going to, or returning from, *physician* ordered medical care when this incident occurred." (Emphasis in original.) With respect to a hospital's policies, she specifically argued that, "at best, the standard practice of the hospital might be one fact to consider in the overall analysis, but is neither an element of a statutory medical claim nor solely determinative." Christian asserted that, consistent with *Christian I*, the trial court should again deny the motion for summary judgment. Christian attached the affidavits of Hall and Christian that had previously been provided to the trial court.

{¶ 14} In a reply memorandum, Kettering Medical Center asserted that *Christian I* should be interpreted to mean that "if it was KMC's standard practice to remove prospective patients for their vehicles, then the transfer is not too attenuated from the receipt of medical treatment, care, and diagnosis to constitute a medical claim."

{¶ 15} On January 31, 2017, the trial court granted Kettering Medical Center's motion for summary judgment. As in its previous summary judgment ruling, the trial

court reviewed the statutory standard for a "medical claim," as well as case law interpreting that phrase. The trial court also reviewed the Emergency Medical Treatment and Active Labor Act (EMTALA), which Weimer discussed in his affidavit. Applying the law to the facts before it, the trial court repeated verbatim its reasoning from its previous summary judgment ruling (quoted above). It also addressed the additional evidence before it, stating:

> Moreover, it is undisputed that KMC's standard practice is to transport prospective patients from private vehicles upon arrival at the emergency department and that its policy for emergency treatment of a patient begins with visualizing the patient and evaluating the patient based on the Emergency Severity Index. It is also undisputed that KMC's Emergency Room Personnel are trained to remove a patient from the patient's vehicle because of the mandates under EMTALA. Under EMTALA, KMC is required to provide treatment to patients who have presented on hospital property, including the entire main hospital campus, as well as the parking lot, sidewalk, and driveway. Thus, the court finds that KMC had an obligation to treat Plaintiff under EMTALA when Plaintiff arrived in the parking lot seeking medical care and that Mr. Glenn initiated his assessment and treatment of Plaintiff upon his contact with her in the parking lot. Accordingly, the court finds that, based on the evidence, Plaintiff's claim constitutes a "medical claim" subject to the one-year statute of limitations under R.C. 2305.113. Because Plaintiff failed to file her claim until after the expiration of the one-year statute of limitations, Plaintiff's claim

is time-barred. Thus, even construing the evidence in favor of Plaintiff, the court finds that no genuine issues of material fact remain as to Plaintiff's negligence claim, and Defendant is entitled to judgment as a matter of law.

{¶ 16} Christian appeals the trial court's grant of summary judgment to Kettering Medical Center.

## II. Whether Christian's Claim Constitutes a "Medical Claim"

{¶ 17} Christian's sole assignment of error states that "the trial court erred by finding that Plaintiff-Appellant's claim was a statutory 'medical claim,' and thus time barred and subject to summary judgment, especially given that this [appellate] court previously rejected this finding on substantively identical grounds."[1]

{¶ 18} The term "medical claim" is defined as:

any claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice registered nurse, * * * *and that arises out of the medical diagnosis, care, or treatment of any person.*

(Emphasis added.) R.C. 2305.113(E)(3).

{¶ 19} The terms "medical diagnosis" and "treatment" are terms of art, which relate

---

[1] Christian did not specifically argue, in the trial court or on appeal, that *Christian I* was the law of the case on whether she had presented a "medical claim" and that the trial court erred in addressing Kettering Medical Center's second motion for summary judgment on the merits. Considering that neither party addressed this issue and given our conclusion that the trial court erred in its summary judgment ruling, we state no opinion on whether the trial court erred in allowing Kettering Medical Center to address, with new evidence, the "medical claim" issue.

to the identification and alleviation of a physical or mental illness, disease, or defect. *Browning v. Burt*, 66 Ohio St.3d 544, 557, 613 N.E.2d 993 (1993) (discussing a prior analogous version of R.C. 2305.11). In the context of the statute of limitations for "medical claims," "care" has been defined as "the prevention or alleviation of a physical or mental defect or illness." *Id.* The Supreme Court of Ohio has cautioned that the term "care" "should not be broadly interpreted when the context in which it is used is properly understood." *Id.*

{¶ 20} "Medical claims" include, among other things, derivative claims for relief that arise from the plan of care, medical diagnosis, or treatment of a person; and claims that arise out of the plan of care, medical diagnosis, or treatment of any person and to which either of the following applies:

(i) The claim results from acts or omissions in providing medical care.

(ii) The claim results from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment.

R.C. 2305.113(E)(3)(a) and (b).

{¶ 21} In *Christian I*, we discussed the parties' arguments and the case law interpreting "medical claim" as follows:

> On appeal, Christian claims that her allegations were not "medical claims," because the transfer from her car to the wheelchair was not an inherent part of a medical procedure or physician-ordered treatment. She emphasizes that she had not yet been seen or evaluated by any physician or medical staff, and Glenn did not know the reason that she was at the hospital for treatment. Christian states that her lawsuit is similar to *Conkin*,

1st Dist. Hamilton No. C–110660, 2012-Ohio-2816, which the trial court discussed, and is distinguishable from *Rome v. Flower Mem. Hosp.*, 70 Ohio St.3d 14, 635 N.E.2d 1239 (1994), which *Conkin* discusses.

In *Rome*, the Ohio Supreme Court addressed two cases in which patients were injured at hospitals. In one case, a student radiological intern failed to fasten a footboard to the bottom of a radiology table, causing a patient to fall from the table when it was tilted. In the second, a patient was injured when a component of his wheelchair collapsed as he was being transported from physician-ordered physical therapy following knee surgery. The Ohio Supreme Court held that a "medical claim" includes a hospital employee's negligent use of hospital equipment while caring for a patient which allegedly results in an injury to the patient. *Rome* at syllabus.

As to the case involving the wheelchair, the supreme court noted that the physical therapy was ordered by the patient's physician, that it was standard practice to transport patients to and from physical therapy in a wheelchair, and that the patient was assisted by a hospital employee who was required to use a certain amount of professional skill in transporting the patient in a wheelchair. The supreme court concluded that "the transport of [the patient] from physical therapy was ancillary to and an inherently necessary part of his physical therapy treatment" and resulted from his "care or treatment" at the hospital. *Rome* at 16-17.

In *Conkin*, the First District held that a nursing home employee did not provide "medical care" when transferring the plaintiff's ward, a resident,

from her wheelchair into a Hoyer lift so that the ward could shower. The court reasoned that, even if the Hoyer lift had been used for the alleviation of problems associated with the resident's range of motion, there was "no indication at this point in the proceedings that the use of the Hoyer lift was an inherent part of a medical procedure or that it arose out of physician ordered treatment." *Id.* at ¶ 11. The appellate court further noted that it was "unclear whether a 'certain amount' of professional expertise or professional skill may have been required to transfer [the resident] into the lift." *Id.*

As *Conkin* noted, its holding is consistent with cases from other appellate districts. For example, courts have held that the plaintiff did not assert a "medical claim" when the injury allegedly arose from (1) falling out of a wheelchair while on the way to lunch at an assisted living facility, *Eichenberger v. Woodlands Assisted Living Residence, L.L.C.*, 2014-Ohio-5354, 25 N.E.3d 355 (10th Dist.); (2) falling while attempting to stand from a wheelchair outside the hospital upon discharge, *Hill v. Wadsworth–Rittman Area Hosp.*, 185 Ohio App.3d 788, 2009-Ohio-5421, 925 N.E.2d 1012 (9th Dist.); (3) falling while going from a hospital bed to the bathroom, *Balascoe v. St. Elizabeth Hosp. Med. Ctr.*, 110 Ohio App.3d 83, 673 N.E.2d 651 (7th Dist.1996); and (4) falling backwards while washing hands in a bathroom while receiving rehabilitative care following surgery, *McDill v. Sunbridge Care Ents., Inc.*, 4th Dist. Pickaway No. 12CA8, 2013-Ohio-1618. In each of these cases, the injury did not arise out of medical

diagnosis, care, or treatment.

Kettering Medical Center cites to other cases to support its position that Christian had asserted a "medical claim." In particular, the hospital relies on *Godby v. Med Central Health Sys.*, 5th Dist. Richland No. 04CA89, 2005-Ohio-2671, in which the plaintiff alleged that she was injured after being improperly placed on a stretcher by a security guard at the medical center. (The opinion provided no additional details.) The Fifth District held that "the placement of appellant on the stretcher was 'ancillary to and an inherently necessary part of' her diagnosis and treatment" and concluded that her claim constituted a "medical claim."

*Godby* relied on *Long v. Warren Gen. Hosp.*, 121 Ohio App.3d 489, 700 N.E.2d 364 (11th Dist.1997), which Kettering Medical Center also cites. In *Long*, a patient went to the hospital at the direction of his physician for a colonoscopy; the patient was directed to an examination room, where he changed into a hospital gown. The patient fell while attempting to walk (at the direction of an orderly) from the bed in the examination room to a gurney, which would transport him to the colonoscopy test. The Eleventh District held that transporting a patient to a colonoscopy test was "ancillary to and an inherently necessary part of his diagnosis and treatment" and thus the plaintiff had alleged a "medical claim." It noted that the patient was at the hospital due to his physician's instructions, he fell while attempting to comply with the orderly's instructions to get on the gurney, and the "need to transport appellant arose out of the diagnostic testing directed by

appellant's physician." *Long* at 492.

*Christian I* at ¶ 31-37.

{¶ 22} After discussing the relevant case law, we described the evidence before us.   We noted that Christian came to Kettering Medical Center in Hall's private vehicle upon experiencing a self-described medical emergency.   Christian stated that she "was not expected at Kettering Medical Center and did not present there for any scheduled treatment."   (Christian Aff. ¶ 4.)   Christian did not come to the hospital for any physician-ordered evaluation and/or treatment.

{¶ 23} Hall went inside the hospital and asked for assistance in getting Christian out of the vehicle.   (Hall Aff. ¶ 4.; *see* Glenn Aff. ¶ 5.)   Glenn came outside with a wheelchair and attempted to transfer Christian to it.   (Christian Aff.¶ 6; Hall Aff. ¶ 5; Glenn Aff. ¶ 7, ¶ 9.)   Christian stated that she did not receive any medical care at the time of her injury outside the hospital, that neither she nor Hall advised anyone of the nature of her emergency or symptoms, and that the man who assisted her (Glenn) did not ask any questions about her medical condition or care.   (Christian Aff. ¶ 7.)   Hall likewise stated that Glenn "did not interact with Ms. Christian in any way except to attempt to transfer her from the vehicle to the wheelchair."   (Hall Aff. ¶ 6.)   Hall further stated that Glenn did not ask about Christian's condition, symptoms, or reason for coming to the hospital, nor was he informed of those facts. (*Id.*)

{¶ 24} Glenn's affidavit did not state that he had evaluated Christian, obtained her medical history, or took any other actions (other than helping Christian from the vehicle and arranging for her to be taken into the hospital) to begin her treatment, diagnosis, and/or care related to her medical emergency.   Glenn did state in his affidavit that he

exercised professional experience and skill while conveying Christian from the vehicle to the wheelchair, and that Christian could not have received medical treatment without being transported into the hospital. (Glenn Aff. ¶ 8, ¶ 9.) He further stated the conclusion that transferring Christian from the car to the wheelchair was thus "an inherently necessary part of the desired medical treatment."

{¶ 25} As stated above, we concluded that Glenn's act of transferring Christian from Hall's private vehicle to a wheelchair was "too attenuated from the receipt of medical treatment, care, and diagnosis to constitute a 'medical claim.' * * * Glenn's transferring Christian from a private vehicle to a wheelchair was simply for the purpose of allowing Christian to enter the hospital, where she could then seek medical attention." *Christian I* at ¶ 42-43.

{¶ 26} Since *Christian I* was decided, a few Ohio appellate court cases have been rendered on the issue of whether the plaintiff's claim constituted a "medical claim." None of these cases persuades us that our rationale in *Christian I* was incorrect.

{¶ 27} The only additional evidence before us is the affidavit of John Weimer, RN, the Director of Emergency, Trauma and Support Services at Kettering Medical Center. Weimer states that, in 2012 and today, the EMTALA requires emergency department staff to treat patients that are within 250 yards of a hospital's main building and that Kettering Medical Center's emergency room personnel are trained to remove patients from the patient's vehicle. Weimer further states:

(10) It is Kettering Medical Center's policy that treatment/triage of a patient begins with visualizing the patient and evaluating them on our Emergency Severity Index (ESI)[.]

(11)  The ESI is a 1 to 5 scale (1=severe to 5=less severe) whereby the patient is accessed [sic] to determine the severity of the patient's presenting condition.

(12) The ESI score is used by the triage nurse to determine the personnel and equipment needed to treat patient at the location of first presentation or to safely bring the patient into the emergency department.

(13)  On December 30, 2012, it was standard practice of Kettering Medical Center Emergency Room Personnel to begin the triage process at the emergency department entrance and to assist patients from their vehicles into the hospital.

{¶ 28} Upon review of the evidence now before us, we find nothing that alters our previous conclusion that the transferring of Christian from Hall's vehicle to a wheelchair does not constitute a medical claim.  At the outset, we agree with Christian that the presence (or absence) of a hospital policy or standard practice is relevant to whether the conduct at issue is part of the patient's "diagnosis, treatment or care," but it is not dispositive of that issue.   The same is true regarding whether the hospital employee had specialized training.  As highlighted in cases referenced in *Christian I* concerning transfers to or from a bed or wheelchair, whether a patient's claim constituted a "medical claim" often turned on whether the purpose of the transfer was to receive physician-ordered treatment, not on whether the nurse was trained to transfer patients or whether there was a policy governing when a nurse had to assist with the transfer.   Again, the presence or absence of specialized training or standard procedures are relevant factors, but neither factor is dispositive.

**{¶ 29}** Turning to the facts before us, nothing in Weimer's affidavit establishes that Christian's claim "arises out of the medical diagnosis, care, or treatment" of her. We accept, as undisputed, that Kettering Medical Center was required to treat Christian. The question, however, is when that care began. Weimer described the beginning of treatment as beginning with "visualizing the patient and evaluating them on our Emergency Severity Index (ESI)." Although it is undisputed that Glenn interacted with Christian, there is no evidence that he began any evaluation of Christian's condition. As stated above, Glenn did not state in his affidavit that he had evaluated Christian, that he asked her about the nature of her medical issue, or that he took any actions (other than helping Christian from the vehicle and arranging for her to be taken into the hospital) to begin her treatment, diagnosis, and/or care related to her medical emergency.

**{¶ 30}** And, Hall expressly stated in her affidavit that Glenn did not do those things. Hall stated, "The man who attempted the transfer did not ask me or Ms. Christian any questions regarding her condition, symptoms or reason for coming to the hospital, nor were any of these facts surrounding her appearance at the hospital communicated to him. This individual did not interact with Ms. Christian in any way except to attempt to transfer her from the vehicle to the wheelchair."

**{¶ 31}** Upon review of the evidence, we find that no genuine issue of material fact exists, and we concluded, as a matter of law, that Kettering Medical Center has not established that Christian's claim constituted a "medical claim." We reiterate our previous conclusion that, based on the evidence before us, Glenn's act of transferring Christian from Hall's vehicle to a wheelchair was simply for the purpose of allowing Christian to enter the hospital, where she could then seek medical attention.

**{¶ 32}** Christian's assignment of error is sustained.

### III. Conclusion

**{¶ 33}** The trial court's judgment will be reversed, and the matter will be remanded for further proceedings.

. . . . . . . . . . . . .

WELBAUM, J., concurs.

HALL, P.J., dissenting:

**{¶ 34}** I begin by observing that whether a plaintiff has filed a lawsuit within the one-year statute of limitation for a "medical claim," as opposed to the two-year statute of limitation for a negligence claim, is a question of law for the court to decide. Even if there be some factual uncertainty, a proposition with which I disagree, the discrepancy still is resolved by the trial court after the parties have the opportunity to present all the evidence relevant to the issue.

**{¶ 35}** Nevertheless, in my opinion it is undisputed that the appellant was driven to the hospital by a friend for medical treatment of her hemorrhaging. A hospital employee, emergency room nurse John Glenn, who was trained in lifting and assisting ill people into a wheelchair and whose duty it was to exercise that professional experience and skill, went outside to assist the appellant into a wheelchair. In the transfer, the appellant collapsed. Her lawsuit claims nurse Glenn and the hospital are responsible for her resulting injury. After the trial court first granted summary judgment by entry of May 28, 2015, this court, in a divided opinion, reversed. I readily admit that had I been on the panel originally deciding the case, I would have sided with the dissenting opinion of Judge Donovan. I would have found that the appellant had asserted a "medical claim" beyond

the one-year statute of limitation. In reaching its contrary conclusion, the *Christian I* majority cited a dissenting opinion in *Rome v. Flower Mem. Hosp.*, 70 Ohio St.3d 14, 635 N.E.2d 1239 (1994), and the negligent-credentialing case of *Browning v. Burt*, 66 Ohio St.3d 544, 557, 613 N.E.2d 993 (1993), for the proposition that not every claim against a hospital is a "medical claim." *Christian I* at ¶ 42. That broad generalization fails to focus on the fact that, in this case, a registered nurse, a party specifically designated in the "medical claim" statute, who was trained in lifting and assisting ill and injured people into a wheelchair, was doing exactly that when the appellant presented to the hospital for emergency room treatment. However, our prior opinion is the law of the case and cannot be disregarded absent unique or unusual circumstances.

{¶ 36} Our initial reversal had concluded that Christian's allegations did not constitute a "medical claim" in part because "nothing in the record suggests that transporting a prospective patient from a private vehicle to a wheelchair upon arrival at the emergency department is Kettering Medical Center's standard practice." *Christian I* at ¶ 43. Subsequently, when the motion for summary judgment was renewed, an additional affidavit was submitted. That affidavit indicates the hospital is required by law to provide treatment to patients within 250 yards of the hospital, that emergency room personnel are trained to remove patients from their vehicles, that it was the standard policy of the hospital to begin triage at the emergency room entrance and to assist patients from vehicles into the hospital. Now it is undisputed that the hospital had the duty to treat and care for a patient on hospital property, and it was the hospital's standard practice to do so. Under these circumstances, I agree with the trial court's conclusion, when it again granted summary judgment, that the appellant's cause of action presents a

"medical claim," which was required to be filed under the applicable statute of limitation within one year.

**{¶ 37}** I would affirm the trial court's conclusion that the undisputed facts of this case establish that the appellant is presenting a "medical claim," which was required to be filed within one year of the event. The injury occurred on December 30, 2012. The lawsuit was not filed until October 9, 2014, beyond the applicable statute of limitation.

. . . . . . . . . .

Copies mailed to:

Michael Wright
Robert L. Gresham
Nathan J. Stuckey
Charles F. Shane
Michael A. Rieman
Hon. Mary Katherine Huffman